(November 26, 1917.)

STATE, Respondent, v. SHERWOOD PLATTS, LYLE
PLATTS and SIDNEY PLATTS, Appellants.

[168 Pac. 1143.]

LARCENY—PROOF OF WANT OF CONSENT.

>    *Held*, where there is no direct proof and a total absence of cir-
> cumstantial evidence to prove want of consent of the owner to the
> taking of the animal, the evidence is insufficient to sustain a con-
> viction of grand larceny.
>
>    [As to when animals are subjects of larceny, see note in 47 Am.
> Rep. 765.]

APPEAL from the District Court of the Fourth Judicial
District, for Cassia County.   Hon. Wm. A. Babcock, Judge.

From a conviction for grand larceny, defendants appeal.
Reversed.

T. A. Walters, Atty. Gen., and J. P. Pope, Asst. Atty.
Gen., for Respondent.

Charles A. Sunderlin, for Appellants.

Counsel cite no authorities on point decided.

BUDGE, C. J.—The appellants, Sherwood Platts, Lyle
Platts and Sidney Platts, were convicted in the district court
of the crime of grand larceny and sentenced to serve a term
of imprisonment of from one to fourteen years.   Thereafter
appellants filed a motion for a new trial, which was denied.
This appeal is from the order denying the motion for a new
trial and from the judgment.

    There are but two assignments of error which are of suffi-
cient importance to demand consideration: First, that the
evidence is insufficient to support the verdict; second, that

the court erred in overruling appellants' motion for a new trial.

The evidence on the part of the state, briefly stated, is in substance as follows: The animal alleged to have been stolen is said by some witnesses to have been the property of William Jones; the latter, however, did not appear or offer any evidence either at the preliminary hearing or at the trial. The complaining witness, John Parley Platts, an uncle of the appellants, among other things, testified that he lived near the home of the appellants; about 3 or 4 o'clock in the afternoon of January 2, 1914, he heard a shot fired and looking over into the Orson Platts' field saw the appellants killing a steer; he then went to the home of the appellants' father, and while there saw the appellants' wagon drive up; after returning home he saw two of the appellants bring some meat and put it into their smokehouse; on the following morning he went to the place where the animal was killed and saw the head and other portions of the animal lying upon the ground; he removed the head and threw it into some brush, and later, in May of the same year, he again moved the head and put it "in some more brush." He further testified that he was three-fourths of a mile away from the place where he saw the appellants kill the steer; that Sidney Platts was on a horse and apparently the animal was roped to the horn of the saddle; that Sherwood Platts had hold of the animal's tail; and that he recognized Lyle Platts jumping around and trying to get hold of the animal. Upon cross-examination witness said: "No, I wouldn't say there was a horse there at that time; I never seen a horse." He testified that the animal was hauled to the house of one of the appellants in a wagon-box. Later he says: "I am not positive of that fact—I supposed it was a wagon, I said it was a wagon, and I guess I will stick to it."

Roy Platts, son of the complaining witness, testified that he saw appellants in the Platts field on January 2, 1914, from about 3:30 to 4 o'clock in the afternoon; just prior to seeing them he heard a shot fired; he then went to the lower

end of the field, being a distance of about 250 yards; he saw the appellant Sherwood Platts shoot the steer; he then went home; the next day he and his father went back to the place where the steer was killed and found the head, liver and paunch of the dead steer; the steer belonged to William Jones; and that his father moved the head and took some of the liver home. There was some other evidence offered on the part of the state, tending to identify the head of the animal as the one found in the Platts field.

The appellant Lyle Platts, upon his examination, testified in substance, that on January 2, 1914, he was at the home of Frank Marcus, situated six or six and one-half miles west of the Platts field, where the steer is alleged to have been killed; he did not return home until late in the evening of January 2, 1914; and he was visiting at the home of his sister by invitation upon this day. He is borne out in his testimony by his brother-in-law Marcus, his wife, Mary Platts, Ben McNeil, John Retan and Orson Platts. The latter three witnesses saw him at the Sherwood Platts ranch on the evening of January 2, 1914.

Sherwood Platts, among other things, testified that he was at his home on January 2, 1914; John Retan, Ben McNeil and Abe Thompson were also there, together with his father; his mother was not there until that evening, she returned after dark; he did not see Lyle Platts there on January 2, 1914; he did not kill or assist in the killing of any steer at the date alleged in the Orson Platts field; he was in the field in the afternoon and got a load of hay; and that the appellants did not possess a wagon-box.

He is corroborated in the main by the testimony of John Retan, who testified that he lived about a mile and one-fourth north of the Sherwood or Orson Platts ranch; he was at the Sherwood Platts ranch on January 2, 1914, went there about 1 o'clock and left about 11 o'clock; Ben McNeil, Sherwood, Sid and Mr. Platts were there; Sherwood left to feed the cattle in the afternoon; and that Sidney Platts did not go away from the place in the afternoon. To the same effect is the evidence given by Ben McNeil.

Appellant Sidney Platts testified that on January 2, 1914, he was at the Sherwood Platts ranch; Ben McNeil and John Retan were also there; that his brother, Lyle Platts, was not there. His testimony is also corroborated in part by the testimony of Ben McNeil and John Retan.

One G. B. Smit testified, in substance, that between the 28th and 30th of December, 1913, he placed in the northwest corner of Orson Platts' field the head and a part of the carcass of a steer; the state's exhibit "A," being the head of the steer found in the Platts field, was the same head that he placed there; he got the head, together with other portions of the steer, about one-half or one-fourth of a mile from Ben McNeil's homestead; the whole carcass was there at the time, except one side which had been eaten by wild animals; the carcass at that time looked as though it had been dead for about a week; he discovered the carcass somewhere around the 26th or 27th of December, 1913; the next day he went and got Platts' team and hay-rack, cut the carcass up and distributed it around in the neighborhood of Dry Creek and towards Gunnells, put the head and entrails in Platts' field; and that he used it for bait for the purpose of catching wild animals.

Ben McNeil corroborates this witness to the effect that he saw a dead steer about three-fourths of a mile north of his place; and that the head, state's exhibit "A," "bears strong resemblance to the head of steer I have seen before."

Marion Johnson testified that during the winter of 1913–14 he was with the forest service; he remembered seeing a dead steer about three-fourths or one-half a mile from the homestead of Ben McNeil, about Christmas or New Year, 1913; and that Ben McNeil told him of the dead steer.

In criminal cases the humanity of our law requires that the guilt of the accused should be fully proven. The law imposes upon the state the burden of proving all of the elements of the crime charged beyond a reasonable doubt. If there is anything proven against the appellants, it is the killing of a steer, which is said to have been the property of William Jones. The killing, if done at all, was done in the

daytime, upon the open field in a settled country, and without any effort to conceal it. From a careful examination of the record in this case it nowhere appears, neither was there an effort made by the state to prove, that the steer alleged to have been stolen, if taken, was so taken without the owner's consent. Where, as in this case, there is no direct proof and a total absence of circumstantial evidence to prove want of consent of the owner, the evidence is insufficient to sustain a conviction of grand larceny.

Although it might be conceded that the steer was the property of William Jones and that it was slaughtered by the appellants, still in and of itself this is not sufficient to establish the crime of grand larceny. The prosecutor must add other circumstances indicative of guilt. Proof of the felonious taking, which means that there was no color of right or excuse for the act, is not established in this case. In other words, the state failed to establish the felonious taking by trespass of the animal in question without the consent of the owner, either by direct proof, circumstantial evidence or mere inference. In fact, every act testified to by the complaining witness and his son would tend to establish that the animal, if killed, was slaughtered with the consent of the owner.

For the reasons herein given the judgment must be reversed and a new trial granted, and it is so ordered.

Morgan and Rice, JJ., concur.