(No. 5438.  May 16, 1930.)

STATE, Respondent, v. NICK KAISER and EMARY ARVOLD, Appellants.

[288 Pac. 154.]

Solon B. Clark and Tyler & Christensen, for Appellants.

W. D. Gillis, Attorney General, and Fred J. Babcock, Assistant Attorney General, for Respondent.

LEE, J.—Defendants and appellants, Nick Kaiser and Emary Arvold, were convicted of the crime of grand larceny, consisting of the theft of a steer calf belonging to one Anna Gini, and were duly sentenced to a term of from one to fourteen years. From the judgment, they have appealed, assigning insufficiency of the evidence and the action of the trial court in denying their motion to suppress certain evidence, and refusing their request for an advisory instruction to acquit.

The motion to suppress was timely made, on the ground that the premises of the defendants were searched

without a search-warrant, warrant of arrest or as incident to a legal arrest, thereby violating defendants' constitutional rights as to immunity from unreasonable searches and seizures, and being compelled to testify against themselves. The evidence shows that the prosecuting attorney and deputy sheriff of Custer county, with two others, visited defendants' premises, without their knowledge or permission, about 11 o'clock on the night of November 6, 1928, and examined three head of cattle in defendants' corral. They had no search-warrant or warrant of arrest, nor did they make an arrest that night. They returned to the ranch about 3 o'clock in the afternoon of November 9, 1928, and placed defendant Arvold under arrest. At this time the deputy sheriff asked permission to "look around the premises" and received Arvold's permission to do so. During the ensuing search the officers found a calf head behind a board gate, a dressed calf carcass in the barn, a rifle from which they extracted a fired shell, and tracks leading from the place of slaughter to where the calf head was found and others going down Garden Creek.

Conceding, for the purpose of argument, without deciding, that that part of the motion as to the evidence secured on the night of November 6th should have been sustained, this testimony consisted of nothing more or less than an identification of the cattle found there that night, and as other competent proof of the identity of the calf in question was subsequently offered, no prejudice resulted to the defendants. The motion as to the evidence gleaned from the search on the ninth was properly overruled. It was made with defendant Arvold's permission, which removes every trace of unreasonableness, the only thing inhibited by the Constitutions of both the United States and the state of Idaho. Permission was voluntarily given.

Appellants next contend that the evidence is insufficient to support the verdict, as the ownership of the calf in question, on the date of the alleged crime, is not shown, nor is the nonconsent of the owner to the killing shown.

On the question of ownership, the state called Andrew and Mike Gini, sons of Anna Gini, whose name was indorsed upon the information as the owner. They testified that they managed their mother's ranch and cattle, and positively identified the skin of a calf head introduced in evidence as that of a calf owned by their mother. This skin was identified by several witnesses as that taken from the head found in defendant's corral. Defendants contend that this is not sufficient to prove ownership of the calf on the date of the alleged crime. Mrs. Gini was not called as a witness. It is apparent that the sons were far better qualified to identify the calf than Mrs. Gini. Both testified that their mother owned the calf in question on the 9th of November; *vide* the following testimony:

Mike Gini: "Q. The day you saw the cow on the 10th of November did you see any calf following the cow? A. No.

"Q. Did you see the head of a calf that day, or about that time? A. Yes. . . . .

"Q. Do you know to whom that calf belonged; who owned the calf? A. My mother."

Andrew Gini: "Q. Was there a calf following this cow when you saw it in the Bradbury field? A. No, sir, there wasn't.

"Q. Did you see the head of a calf? A. Yes. . . . .

"Q. Did you recognize what calf that head was taken from? A. Yes, I did. . . . .

"Q. Do you know who owned that calf? A. My mother."

He had just testified that he had seen a cow, owned by his mother, in Jack Bradbury's field some time after November 9, 1928. This is sufficient proof of ownership of the calf by Mrs. Gini on November 9th.

█ Defendants next complain that the record wholly fails to show a felonious taking by them. There is no whit of direct proof by Mrs. Gini, the owner, or her sons, that the calf was not properly in defendants' possession, or that the killing was not done with their consent.

The only evidence introduced was that of the prosecution. It shows that on November 5th, cattle tracks, followed by human tracks, were seen leading from a point about two miles above defendants' ranch to where three head of cattle were seen opposite the gate leading into the ranch. Nick Kaiser was seen disappearing over the brow of a hill at this time. Later that day the tracks were seen going into the premises.

On the morning of November 9th, the defendants were seen examining three head of cattle in their corral, and about 2 o'clock that afternoon the witness, Siebe, testified that the defendant, Arvold, and one Simmons came out of the house and went to the corral, the defendant carrying a rifle; that later he heard a shot and saw the calf floundering on the ground, and saw Simmons go over to the calf and kneel by its head. Shortly thereafter the deputy sheriff, prosecuting attorney and witness Siebe, who had reported the killing, arrived at the premises, arrested Arvold and made the search described above. Both Siebe and the deputy sheriff saw Kaiser leave the ranch as they drove up. Arvold was left in the custody of Siebe, while the deputy sheriff and prosecuting attorney followed the tracks down Garden Creek in search of the calf hide, which was never found, although they saw where a bloody, hairy object had been laid in the snow. Siebe permitted Arvold to go into the house, but did not himself go in, as he saw a man lying on the bed and one under the bed, and feared violence, if he went in. He stayed in the proximity of the house and on one occasion, when he approached the front door, Arvold pointed a gun at him. The prosecuting attorney returned shortly after this, and went into town to summon assistance to re-arrest Arvold.

The deputy sheriff in the meantime had met defendant Kaiser in the road returning to the ranch and arrested him for shooting the calf. Kaiser said he knew nothing about it as he had been cutting wood all day. He said he was going to notify the sheriff that he had two head of estray

cattle in his corral. Upon being told that there had been three head, he said he knew nothing about it.

Re-enforcements having arrived from town, witness Buchannan went up to the house to arrest Arvold, being compelled to cover him with a gun before he submitted. The deputy sheriff then came in with Kaiser, who changed shoes, which the prosecuting attorney took and placed in the snow alongside the tracks leading to where the calf head was found. The imprint was identical. These tracks were the same as those going down Garden Creek.

During his confinement in the county jail, Arvold sent for Buchannan and asked him to find out if he could plead guilty, be sentenced and have the sentence suspended provided he left the state and never returned. He also told Buchannan that anyone could see from the way they went about the job that they were not butchering for market purposes.

The corral in which the cattle were kept is about 600 yards from a main traveled road leading from Challis, and is used extensively by cattlemen in driving their cattle from the hills. It is visible from the road in many places, but brush and trees obstruct the view in others.

■■ Want of consent is a necessary element in the proof of the crime of larceny. This court has held that it may be proven by circumstantial evidence. (*State v. Ireland*, 9 Ida. 686, 75 Pac. 257; *State v. Platts*, 31 Ida. 19, 168 Pac. 1143. See, also, *State v. Jones*, 119 Or. 320, 249 Pac. 360; *State v. Wong Quong*, 27 Wash. 93, 67 Pac. 355; *Jackson v. State*, 10 Okl. Cr. 525, 139 Pac. 324, 325; *Devore v. State*, 33 Okl. Cr. 403, 243 Pac. 999.)

The trial court fully instructed the jury on this point, and this court is not prepared to say that the evidence is insufficient to sustain their verdict, merely because the owner did not testify, or because her sons were not asked the specific question, which is required in many jurisdictions. They were entitled to consider the undenied statements made by the officers as to defendants' efforts to conceal the hide, their proven false statements as to lack of knowl-

edge concerning the matter, their actions when arrested, and statements made by them at different times. All these factors were circumstances which may properly have been considered by the jury in arriving at their verdict. The request for an instruction advising acquittal was properly denied.

Judgment affirmed.

Budge, Varian and McNaughton, JJ., concur.

Givens, C. J., took no part in the decision.