(No. 6465.   November 16, 1938.)

STATE, Respondent, v. MARTIN VANEK and CHARLES
VANEK, Appellants.

[84 Pac. (2d) 567.]

W. L. Dunn, for Appellants.

J. W. Taylor, Attorney General, and R. W. Beckwith, Assistant Attorney General, for Respondent.

HOLDEN, C. J.—January 4, 1937, an auction of farm machinery, cattle, horses, etc., was held at the Padaraza farm in Twin Falls county. Lewis Robbins lived about four miles west and three miles south of that farm. Defendant Charles Vanek lived two and one-half miles north and two miles west of the Padaraza farm and about seven miles north of the Robbins farm. Robbins and wife left home on the morning of the day of the sale at about 11 o'clock and arrived at the Padaraza farm at about 11:30. In the Robbins barn at that time were hanging two bridles, a set of used double work harness, as well as a set of new harness, the latter hanging in plain view, and nine sacks of chopped oats, The defendants left home in the morning of that day at about 10:30 and arrived at Padaraza's at about 11 o'clock. Robbins saw the defendants at the sale immediately upon his arrival, but had no conversation with them, nor did he see them leave the sale. He got back home at about 3:30 in the afternoon. At about 5 o'clock, while doing the chores, he noticed a pole strap in the door of the barn and, upon investigation, found that the double set of used work harness, the two bridles, and

three of the nine sacks of chopped oats were gone, and at once reported the loss to deputy sheriff Walter J. Tschannen. Later, at about 7 o'clock, Robbins, Tschannen, and Frank Goodman, by the aid of a flashlight, examined automobile tracks made in loose gravel, leading from the road on to the Robbins farm, tracing the tracks to within about 15 feet of the Robbins barn. Some time after 7 o'clock it snowed. The next morning Robbins, Tschannen, and Goodman went over to the Vanek farm where car tracks in snow were noticed (and examined) coming out of the yard, the tracks appearing to be the same as those leading from the road into the Robbins yard. Robbins then (the same morning) went to town and got a search warrant, immediately after which Tschannen, Robbins, Goodman, and Virgil K. Barron searched the Vanek premises where they found the missing bridles on top of a straw shed and the missing harness hidden in a clover chaff pile north of the Vanek barn. At the same time, while searching the Vanek premises, three empty bean sacks were found in the grain bin; one had no marks by which it could be identified; one had been torn and sewed up; on the bottom of the third there was an identification number which had been given Robbins by an elevator which had handled Robbins' beans, the identification number reading: "Lot No. 374."

Following the finding of that personal property on the Vanek farm, the Vaneks were arrested on a charge of burglary, given a preliminary examination, and held to answer to the district court for Twin Falls county. March 8, 1937, an information was filed in that court charging the Vaneks with the crime of burglary. March 29, 1937, they were tried and found guilty of burglary in the second degree. April 7, 1937, judgment was entered on the verdict, sentencing the defendants to serve not less than one nor more than five years in the state penitentiary. April 10, 1937, defendants moved for a new trial. April 30, 1937, the motion was denied. The defendants appealed from both the judgment of conviction and the order denying a new trial.

Appellants contend the information does not state facts sufficient to constitute a public offense; that it does not con-

form to the requirements of sections 19–1309, 19–1310, and 19–1311, I. C. A., in that, it is insisted, the information "does not contain a statement of the acts constituting the offense in ordinary and concise language, in such manner as to enable a person of common understanding to know what is intended; and that it is not direct and certain as to the offense charged or the particular circumstances of the offense charged"; that it fails to allege any unlawful breaking and entering, and it is "impossible to tell therefrom whether or not it is intended to be alleged that the alleged burglary was committed in the night time or in the day time."

The information charges that "The said Martin Vanek and Charles Vanek, on or about the 4th day of January, 1937, in the County of Twin Falls, State of Idaho, did then and there wilfully, wrongfully, unlawfully, feloniously and burglariously enter a certain building, to-wit, a barn located on Lot 3 and Lot 4, in Section 6, Township 11 South, Range 14 E.B.M., and occupied by Lewis Robbins, with the intent then and there to commit larceny therein."

Sec. 17–3401, I. C. A., provides:

"Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, vessel, or railroad car, with intent to commit grand or petit larceny or any felony, is guilty of burglary."

Subdivision 2 of section 19–1309, I. C. A. (applicable also to informations) provides the indictment must contain:

"A statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

Section 19–1310, I. C. A., provides the indictment "may be substantially" in the form therein set out.

And sec. 19–1311, I. C. A., provides the indictment must be direct and certain as it regards: . . . . 3. The particular circumstances of the offense charged, when they are necessary to constitute a complete offense.

In support of the contention that the information is insufficient in the particulars above stated, appellants cite and

rely upon *State v. McMahan,* 57 Ida. 240, 65 Pac. (2d) 156. In that case, this court said that "to put a man on trial without giving him, in the information, '*a statement of the acts constituting the offense* in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended,' and to let him know these facts, for the first time when his trial is in progress, is to deprive him of the protection the statute was designed to give him and deny him due process of law in violation of article 1, section 13 of the Constitution."

Here, the information is not only substantially in the language of the statute, but charges the particular circumstance constituting the offense, in that it charges defendants did "wilfully, wrongfully, unlawfully, feloniously and burglariously *enter* (emphasis ours) a certain building, to-wit, a barn . . . . occupied by Lewis Robbins, with the intent . . . . to commit larceny therein." Under the statute (sec. 17–3401, *supra*), but a *single act* is required to constitute the crime of burglary, to-wit, *entry.* Therefore, the *entry* of any house, etc., "with intent to commit grand or petit larceny or any felony," constitutes the crime of burglary. The information having charged the *commission* of the *act* which constitutes the offense, thereby charged the fact or circumstance of the entry, and having charged the commission of that act in ordinary and concise language, and in such manner as to enable a person of common understanding to know what was intended, it follows that the information fully complies with every requirement of the statute (sec. 17–3401, *supra*) and *State v. McMahan, supra.*

The "breaking" required at common law to constitute the crime of burglary is not an essential element of the crime under sec. 17–3401, *supra.* (*State v. Sullivan,* 34 Ida. 68, 199 Pac. 647, 17 A. L. R. 902.) Consequently, the information need not allege an unlawful "breaking," as contended by appellants.

It is contended the information is not sufficient to support a judgment of conviction for second degree burglary in that it does not charge when the crime was committed, whether

in the day time or night-time. Sec. 17–3402, I. C. A., provides:

"*Degrees of burglary.*—Every burglary committed in the night time is burglary of the first degree, and every burglary committed in the day time is burglary in the second degree."

Sec. 19–2212, I. C. A., provides:

"*Conviction of included offense.*—The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment, or of an attempt to commit the offense."

Under the statute (sec. 17–3402, *supra*), the entry of any barn, stable, etc., in the night-time with intent to steal constitutes burglary in the first degree, and an entry in the daytime with like intent constitutes burglary in the second degree, the crime being divided into two degrees, first and second. The information did not charge an entry in the night-time. It charged that the defendant wilfully, wrongfully, unlawfully, feloniously and burglariously entered the Robbins barn with intent to commit larceny therein. The failure to charge the entry was made in the night-time excluded first degree burglary, but the information having charged an unlawful and felonious entry of the barn with intent to steal, thereby necessarily charged second degree burglary. The jury, therefore, could, as it did, find a verdict of guilty of the included lesser offense.

It is contended the trial court erred in refusing to give certain requested instructions. A careful comparison of the requested instructions with those given discloses that the substance of the requested instructions was covered by the instructions given by the court, hence no error was committed by refusing to give those requested. (*State v. Farris,* 48 Ida. 439, 282 Pac. 489; *State v. Brace,* 49 Ida. 580, 290 Pac. 722; *State v. Stratford,* 55 Ida. 65, 37 Pac. (2d) 681.) Moreover, we have carefully examined the instructions given by the court and find they fully and correctly state the law applicable to the facts and circumstances of this case.

And appellants complain the trial court erred in giving an instruction to the effect that the possession of

recently stolen property, when unexplained (the *corpus delicti* having been established otherwise than by possession), is a circumstance from which guilt may be inferred. Instructions to that effect have been uniformly sustained and approved by this court. (*State v. Sanford,* 8 Ida. 187, 67 Pac. 492; *State v. Bogris,* 26 Ida. 587, 144 Pac. 789; *State v. Jackett,* 45 Ida. 720, 264 Pac. 875; *State v. Davis,* 57 Ida. 413, 65 Pac. (2d) 1385.)

Appellants further contend the evidence is insufficient to support the judgment of conviction and, in particular, as to defendant Martin J. Vanek. The judgment of conviction rests wholly upon circumstantial evidence. It may be summarized as follows: That the Vaneks drove to the sale in a Chevrolet car and that the car was equipped with three U. S. Royal tires and a Goodrich Silvertown; that the car tracks leading from the road to the Robbins yard appeared to be the same as those leading out of the Vanek yard; that the bridles and harness taken from the Robbins barn January 4, 1937, were found the next morning at the Vanek place, and three bean sacks, one of which was positively identified by Robbins, were found in Vanek's grain bin, together with chopped oats, claimed to be approximately the same quantity as that taken from the Robbins grain bin; that one of the state's witnesses testified he saw the defendants leave the sale at about 12:30; that he saw them again about 3 o'clock and did not see them at the sale between 12:30 and 3 o'clock; that Vanek (the father) made several purchases at different times during the sale, and the clerk of the sale testified that from two and one-half to three hours passed between the first and last purchases made by Vanek, but that that "would be a guess."

The appellants relied largely upon an alibi. The following is a concise statement of the testimony given in support of that defense: Anna Novak testified she attended the Padaraza sale; that she was at the sale from 11 o'clock in the morning until 10 minutes after 4 in the afternoon; that she was in touch with the Vaneks most of the time and the Vaneks did not leave the sale at any time after she arrived. Frank Novak testified that he arrived at the sale about 10:30

in the forenoon; that he talked with the defendants a good deal of the time; that he was with them off and on throughout the sale; that he was there during the entire sale; that defendants did not leave from the beginning to the end. And the defendants testified they arrived at the sale about 11 o'clock in the forenoon and left about five in the afternoon and that they were not at or near the Robbins place January 4, 1937. In addition to that testimony, there was also evidence that U. S. Royal tires constituted 98 per cent of the factory equipment of Chevrolet cars in 1934 and 1935; that there could have been a dozen bean sacks out around Buhl with "Lot No. 374" on them; that the state's witness who said he saw appellants leave and return to the sale admitted he had "it in" for Vanek (the father); that the elder Vanek bought chopped oats "right along" for his cows; that appellants did not know the bridles were on the straw shed nor that the harness had been hidden in the clover chaff.

Where a defendant relies upon the defense of alibi, the burden of establishing such defense is upon him, and if he succeeds, by competent evidence, in establishing a reasonable doubt in the minds of the jury as to his presence at the time and place when and where the offense was committed, when the committing of the offense by him made his presence imperative, he is entitled to an acquittal, but the character and extent of the evidence requisite to create such doubt is a matter for the jury. (*State v. Webb,* 6 Ida. 428, 55 Pac. 892; *State v. Rice,* 7 Ida. 762, 775, 66 Pac. 87; *State v. Bogris,* 26 Ida. 587, 144 Pac. 789; *State v. Ward,* 31 Ida. 419, 421, 173 Pac. 497.)

Appellants further contend there is no evidence that the crime of burglary was, in fact, committed, in that, it is claimed, there is no evidence the defendants, or either of them, actually entered the Robbins barn and took the personal property in question, and the proof of the *corpus delicti* must exclude all uncertainty, citing *State v. Sullivan, supra,* and *State v. Brassfield,* 40 Ida. 203, 214, 232 Pac. 1. In the first case, Sullivan and other hoboes were charged with and convicted of the crime of burglary. The goods alleged to have been stolen were found in a hobo camp where

all the defendants happened to be at the time the goods were found by an officer. It was contended there, as it is here, that there was no proof of the *corpus delicti,* and in the discussion of that case the court said where proof of the *corpus delicti* is made by circumstantial evidence, "it must be established so as to positively exclude all uncertainty, and be sufficient to satisfy the understanding and conscience of the jury beyond a reasonable doubt; or, as expressed by many of the writers, 'The *corpus delicti* ought to be proved either by direct testimony or by presumptive evidence of the most cogent and irresistible kind.' " It is apparent what this court actually held was simply this: Where proof of the *corpus delicti* is made by circumstantial evidence, "it must be sufficient to satisfy the understanding and conscience of the jury beyond a reasonable doubt." What has been said also applies to *State v. Brassfield, supra.* It may be added that the essential elements of every crime must be established beyond a reasonable doubt, and no greater proof is required to establish the *corpus delicti* than is required to establish any other essential element of the crime of burglary. As was correctly stated in *Maples v. State,* 59 Okl. Cr. 324, 58 Pac. (2d) 963, 965, "Burglary is one degree removed from larceny; but when the facts in evidence warrant the finding of the larceny, and the surrounding circumstances are such as to show that the larceny could not be committed without the burglarious entry, the evidence is sufficient to warrant the finding of the burglary also."

The evidence shows the barn on the Vanek place was from 1000' to 1200' from the house; that the straw shed was about 200' from the barn in a northeasterly direction; that the house itself was 100' from the highway and that to reach the highway one drove right past the house; that there were other buildings between the house and barn and straw shed that would obstruct the view of the shed from the house and that to reach the barn and straw shed from any other direction than the west, or going past the house, the distance would be one-quarter mile from the south, three-quarters of a mile from the east and three-quarters of a mile from the north. It is argued that this gave free access to the premises

and an opportunity to anyone who cared to do so to place the stolen property where it was found and, therefore, that additional evidence was necessary to establish the *corpus delicti*; that the possession was constructive and not actual and exclusive, and that the burden was on the state to prove the possession was conscious and personal. In support of that contention, appellants cite and rely upon *State v. Sullivan, supra,* where this court said:

"The general rule that the possession of stolen property is evidence of guilt is limited by the rule that to warrant an inference of guilt it must be shown that the possession is personal, and that it involves a distinct and conscious possession by the accused. (Citing cases.)

"It would be carrying the rule too far to require one accused of crime to explain the possession of stolen property when such possession could also, with equal right, be attributed to another. Hence the mere fact of finding stolen property on premises, or any other place, to which many others have free access, without showing his actual, conscious possession thereof, discloses only *prima facie* constructive possession, and is not such possession as will justify an inference of guilt by reason thereof. The unexplained possession by one of goods belonging to another does not raise the presumption that a larceny has been committed, and that the possessor is a thief; additional evidence is necessary to establish the *corpus delicti.*"

In the Sullivan case, *supra,* this court further said that "there is no evidence in the record tending to show that there was ever a burglarious breaking or entry into the store building of Gorman Brothers (alleged to have been burglarized), either in the daytime or at night, and the only evidence upon which this conviction rests is that the articles of food and clothing found in the camp of these appellants were articles similar to those carried by Gorman Brothers." In other words, in that case it was held there was no evidence that the crime of burglary had actually been committed. The state contended, however, the possession of the stolen goods, together with all the other facts and circumstances, was sufficient to convict, citing, as the court said, "a formidable

array of authorities'' in support of that contention. But this court said all such authorities were predicated upon the assumption that the burglarious entry had been proven, clearly recognizing the general rule that where the *corpus delicti* is proven and the property sufficiently identified, it is admissible for the state to prove, as tending to show intent, and to connect the defendant with the burglary, that he was in possession of the property stolen shortly after the crime was committed, and that such possession was sufficient to convict when supplemented with other facts inconsistent with the idea that the defendant's possession was honest.

In the case at bar, the record shows, without contradiction, that the bridles and harness in question were in the Robbins barn on the 4th day of January, 1937, that they were taken from the barn without Robbins' knowledge or consent, that he identified them and that they were his property, which establishes the fact that the crime of burglary was actually committed by someone. And that brings us to the question (the *corpus delicti* having been proven) as to whether the facts in this case establish only *prima facie* constructive possession, from which no inference of guilt can be drawn, or whether such facts establish an actual, personal, conscious possession from which an inference of guilt can be drawn. Appellants' explanation of the presence of the stolen property on the Vanek farm was that they did not know it was there. It is well settled that the jury are the exclusive judges of the credibility of the witnesses and weight of the evidence. If the appellants knew the stolen property was on the Vanek farm, then and in that case, the possession was actual, personal and conscious, at least so far as defendant Charles Vanek is concerned, and not merely constructive. There is no question but what the jury not only did not believe the explanation given by appellants but, on the other hand, did believe that they knew the stolen property was on the Vanek farm where it was found by the officer, because the jury found appellants guilty. And while that is true, the real question here is this: Is the evidence sufficient to establish beyond a reasonable doubt that appellants were in the actual personal and conscious possession

of the stolen property? On that point our attention is
especially directed to these undisputed facts: That the bridles
were found on the straw shed in plain view; that the elder
Vanek had two new harnesses and that there was a new
harness hanging up in the Robbins barn in plain view at
the time the old harness and bridles were taken; that Vanek
purchased numerous articles at the sale, as well as an auto-
mobile. In addition to that, as hereinbefore pointed out,
there were buildings on the Vanek farm which obstructed
the view of the straw shed and barn from the house, which
gave, as appellants insist, an opportunity to others to place
the stolen property where it was found, without being seen
by appellants. "So that it looks more like a plant on the
defendants, than a larceny on their part," it is contended.

If appellants committed the crime charged against them,
why would they have placed the bridles on the straw shed
where anyone looking for the stolen property would be sure
to see them, and why would they have concealed the harness
in the clover chaff to avoid discovery and then have placed
the bridles on the shed where discovery would be sure and
certain? Why would anyone, unless suffering with klepto-
mania, steal an old harness when he already had two new
harnesses, and, is it reasonable to believe that a thief would
take an old harness when there was a new one in plain view?
And would not a thief have taken both the old and the new
harness? Again, why would a thief be satisfied with stealing
only three sacks of chopped oats when there were six more
which could have been stolen as easily as the three sacks?
The numerous purchases made by the elder Vanek, includ-
ing one apparently substantial, an automobile, do not seem
to indicate he attended the sale for the purpose of building
up an alibi. They do, however, seemingly indicate that
Vanek was at least not in such a condition of poverty as
would drive him to steal an old harness and two bridles of
which, by the way, there is no evidence in the record showing
he had the slightest need. Furthermore, and this is most
significant under the circumstances, the record shows that
suspicion was not directed against appellants by the finding
of the car tracks leading into the Robbins yard, which were

testified to be similar to those leading out of the Vanek yard, but as the result of a conversation by the deputy sheriff with one of the state's witnesses. And it may be added that the only person present at the sale who testified that appellants left at any time was Frank Hack and he admitted that he had "it in" for the defendants.

Appellants contend they could not be required to answer the charge made against them until the *corpus delicti* had first been proven. The rule is that proof tending to connect the accused with the alleged crime may properly be admitted without first establishing the *corpus delicti*, the order of proof being within the sound discretion of the court. (*State v. Brassfield, supra.*)

Finally, it is vigorously contended there is no evidence to support the conviction of defendant Martin J. Vanek. (*State v. Burke,* 11 Ida. 420, 83 Pac. 228, is cited and relied upon.) As in the case at bar, both father and son, George Burke and David W. Burke, were jointly charged with the crime of burglary. The pertinent facts are substantially as follows: The father, George Burke, resided on a farm near the town of Mohler; the son had been stopping with him for a couple of weeks, had been employed to assist his father, but had no interest in the farm or the business or in any of the property about the farm except as an employee; upon an adjoining farm was situated a granary belonging to one L. M. Englehorn; April 9, 1904, the granary containing a considerable quantity of barley and oats was burned; the next morning the tracks of a man were discovered from which it appeared that the person making the tracks had made frequent trips from the road to the granary; the tracks of a wagon were also found, as well as where sacks had been placed on the ground previous to loading; the tracks of the wagon were followed to where they turned into the residence of George Burke; by following the tracks, the wagon was found with some scattered barley on the floor of the wagon box; 20 to 25 sacks of barley were found in George Burke's granary which did not belong to him and which he did not claim; it was shown with reasonable certainty that from 15 to 25 sacks of barley had been hauled on the night of the fire from the

Englehorn granary to George Burke's granary and placed in the latter granary, and that the hauling was done with George Burke's wagon; George Burke testified he did not know how the barley came into his granary; that he had one pretty good wagon harness but the breast straps had been loaned, one of the tugs was broken, and all the other harness he had was plow harness; there was no evidence showing whose team hauled the grain; David W. Burke, the son, never claimed the grain and never claimed to have had any grain at his father's place; he testified he knew nothing about the removal of the grain or the burning of the granary; the son had been tried on a charge of arson for burning the granary and had been acquitted, and he had been convicted of a felony in the state of Washington.

In the case at bar, the record shows that the son, Martin J. Vanek, was "just staying" with his father and had no interest in his father's place; that he had never seen the missing harness and bridles until after his arrest; that he did not know the bridles were on top of the straw shed nor that the harness had been hidden in the clover chaff; that he never claimed any of the personal property alleged to have been stolen, and there is no evidence he was seen at or near the Robbins place at the time it is alleged the property was stolen.

The evidence against the son in the case at bar does not seem to be a whit more substantial or incriminating than the evidence against the son, David W. Burke, in *State v. Burke, supra.* In that case, this court reversed the judgment of conviction and granted a new trial.

We conclude the evidence is insufficient to support the judgment of conviction. Therefore, the judgment is reversed and the cause remanded with directions to grant a new trial.

Ailshie, J., concurs.

BUDGE, J., Concurring Specially.—I concur in the conclusion reached in the above-entitled cause reversing the judgment and remanding the case for a retrial, for the reason that in my opinion the evidence is insufficient to support the judgment as to either appellant.

MORGAN and GIVENS, JJ.—We concur in that portion of the opinion which holds the information sufficient to properly accuse appellants of the crime sought to be charged against them. We dissent from that portion of the opinion holding the evidence to be insufficient to sustain the conviction.