STATE, Respondent, *v.* FITZPATRICK, Appellant.

No. 9083.

Submitted November 14, 1951. Decided January 10, 1952.

239 Pac. (2d) 529.

Mr. Paul T. Keller, Mr. Melvin E. Magnuson, Helena, for Appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. H. M. Brickett, Asst. Atty. Gen., Mr. Curtis C. Cook, County Atty., Hamilton, for respondent.

Mr. Magnuson, Mr. Brickett and Mr. Cook argued orally.

MR. JUSTICE FREEBOURN:

By information, filed January 25, 1950, defendant was charged with breaking into and entering the B and M club, in Ravalli county, during the night time on April 21, 1949, with intent to commit larceny therein. A prior conviction of felony was also charged.

Upon trial defendant admitted the prior conviction of felony, and, upon conviction of night time burglary, was sentenced to serve fourteen years in the state prison. From the judgment of conviction defendant appeals.

R. C. M. 1947, sec. 94-901, provides: "Burglary defined. Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, vessel, railroad car, with intent to commit grand or petit larceny or any felony, is guilty of burglary."

R. C. M. 1947, sec. 94-902, provides: "Degrees of burglary. Every burglary committed in the night time is burglary in the first degree, and every burglary committed in the daytime is burglary in the second degree."

R. C. M. 1947, sec. 94-905, provides: "Night time defined. The phrase 'night time,' as used in this chapter, means the period between sunset and sunrise."

The evidence discloses that the burglary was committed on April 21, 1949, between 3:15 a. m., when the club building closed and 8:00 a. m. when it next opened. It further shows that sunrise occurred at 5:56 a. m. on April 21, 1949.

The information specifically charged defendant with night time or first degree burglary. He could not be convicted unless the state proved, beyond a reasonable doubt, that such

burglary was committed in the night time, that is before 5:56 a. m.

In State v. Copenhaver, 35 Mont. 342, 89 Pac. 61, 62, where the defendant, charged by information with the crime of burglary in the first degree, was found guilty of burglary in the second degree—daytime burglary—this court said, speaking through Chief Justice Brantly: "* * * when the pleader, as in this case, makes the specific charge of a burglary in the night time, he unnecessarily narrows the scope of the inquiry. He must be held to the proof of the charge as made, * * * it is obvious that a charge of burglary committed in the night time does not include a charge of burglary in the daytime * * *. In this case the defendant was charged with one crime and convicted of another."

The B and M club building, north and outside of Hamilton, Montana, houses a barroom and cafe with connecting door between. Bennett Richardson, proprietor, was at the place "until three o'clock" on the morning of April 21, 1949. On the same date Frances Reynolds, cashier and waitress, was positive she left the place, locking it up, at three-fifteen o'clock a. m., "because," as she said, "I had to put my time down on a slip of paper."

To prove the burglary occurred between 3:15 a. m. and 5:56 a. m. of April 21, 1949, the state had to rely upon the testimony of one witness, Lloyd Painter, who lived "about fifty yards south" of the B and M club.

His testimony centered upon: When he went to bed in the early morning of April 21, 1949; when he next arose; what cars he saw parked at the club before going to bed; what cars he heard leave the club; and the outside lighting of the club buildings.

On direct examination he said that at "three in the morning" he "drove up to the end of the house and went in and went to bed," and "I went to bed at three or a little after three." His cross-examination showed he went to bed about three, "Just before or after, I don't know."

As to the time he got out of bed, he testified: "A. Just as quick as I got up—six or six-thirty.

"Q. Was that before sunrise? A. Well, I can't tell you whether it was or not. I don't know what time the sun comes up.

"Q. You don't remember whether the sun was shining or not, is that right? A. No."

As to cars being parked at the club, he testified on direct examination:

"Q. Were there any cars around there when you came home that morning? A. Not that I seen."

On cross-examination his testimony was:

"Q. Now you say you came home and went to bed about three? A. Just before or after, I don't know. * * *

"Q. Was there a car parked at the cafe? A. Yes."

As to hearing cars leave the vicinity of the club he testified on direct examination: "I don't know how long I had been asleep when I heard a car leave. * * *

"Q. Now as to this car, could you tell us anything about where that car came from? A. No, all I know was that it just took off and went north.

"Q. It just took off and went north? A. Yes, from the B and M parking space there.

"Q. And it went north? A. Yes. I presume that it went north. I never got out of bed to see what was going on. There was several cars that went out of there. * * *

"Q. And on that night you didn't hear any other cars leave, is that right? A. No, I didn't."

As to the lighting, his direct examination shows: "Will you tell us anything that you observed when you got home that morning? A. The lights was on, all of them, and I remember wondering how come.

"Q. What lights do you mean? A. The lights along the outside there—I don't know just what to call them—the outside lights.

"Q. Did you observe any other lights? A. No, I can't say that I did.

"Q. Besides the outside lights? A. No, I can't.

"Q. What time was it when you saw those lights? A. Just as quick as I got up—six or six-thirty."

His testimony further showed:

"Q. Are you positive that that was the 21st day of April? A. I don't know whether it was the 20th or the 21st of April.

"Q. Then you aren't sure of the day that you observed the lights? A. Well, I just heard the next day that they had been knocked off."

The uncertainty of Painter's testimony makes it of little evidentiary value in fixing, and it in nowise establishes or proves, the time when the burglary occurred, so that such time may be said to have been proven beyond a reasonable doubt by satisfactory evidence.

Not only was there no substantial evidence to prove when the ▮ burglary occurred, but there was a total failure on the part of the state to prove such burglary was committed in the night time. This being so, the state failed to prove one of the essential elements of the crime, as charged in the information, and the judgment of conviction cannot stand. See State v. Welch, 22 Mont. 92, 55 Pac. 927; State v. Foster, 26 Mont. 71, 66 Pac. 565; State v. Gomez, 58 Mont. 177, 190 Pac. 982; State v. Wallin, 60 Mont. 332, 199 Pac. 285; State v. Labbitt, 117 Mont. 26, 156 Pac. (2d) 163.

The judgment, therefore, is reversed and the cause remanded to the district court with directions to dismiss the information and discharge the defendant.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES METCALF, BOTTOMLY and ANGSTMAN, concur.