404 P.2d 580

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Dillard Junior HAGGARD, Defendant-Appellant.**

**No. 9583.**

Supreme Court of Idaho.

July 22, 1965.

**220**

L. Lamont Jones, Pocatello, for defendant-appellant.

Allan G. Shepard, Atty. Gen., and M. Allyn Dingel, Jr., Asst. Atty. Gen., Boise, Hugh C. Maguire, Jr., Pros. Atty., Pocatello, for plaintiff-respondent.

KNUDSON, Justice.

Defendant-appellant, Dillard Junior Haggard, was charged upon five separate counts with having committed the crime of burglary in the nighttime. The jury returned its verdict finding the defendant guilty of burglary in the daytime upon each of counts III and VI and guilty of burglary in the nighttime upon count IV and not guilty upon the other counts. Defendant was sentenced to be imprisoned for an indeterminate time of not to exceed five years upon each of counts III and VI to run concurrently, and for an indeterminate term of not to exceed fourteen years on count IV. This appeal is from the judgment of conviction relative to each of said three counts.

The principal issues presented by this appeal concern the validity of the search and seizure of the articles involved in each of the offenses and the sufficiency of the evidence to establish such personal possession of the stolen property by defendant as to justify a presumption of guilt of the charged offenses.

We shall first review the facts in relation to count III under which it was charged that:

"The said Dillard Junior Haggard did on April 15, 1964, after 6:00 P.M. o'clock of said day, intentionally, felo-

niously and burglariously enter the home of Kenneth G. Smith at 81 Willowood, Pocatello, Idaho, which residence is in the possession of and under the control of Kenneth G. Smith, with the intent to commit larcency."

Mr. Kenneth G. Smith, testified that his house had been broken into between 6 P.M. on April 15 and 11 A.M. on April 16, 1964, and that among the articles which were taken from his home during said period were a fishing creel (Exh. B) and a fishing reel (Exh. C). Exhibit B was in the possession of Calvin Ritchie, a nephew of the defendant, when recovered by the officers. Ritchie, having been called as a witness for the State, testified that he had seen Exhibit B in the trunk of defendant's car in the month of April and that defendant had given this article to him. This testimony is uncontradicted.

Exhibit C was found by the officers April 24, 1964, on top of a wardrobe closet in a bedroom regularly occupied by defendant in the home of his mother, Amy Hill. During April 1964 defendant lived with his mother in a two-bedroom house in which there was no other occupant. Said exhibit was discovered by Detective Moldenhauer while making an investigation of Mrs. Hill's home in company with other officers. Defendant was not present at the time.

Prior to trial defendant filed his motion to suppress the evidence obtained during said investigation or search of Mrs. Hill's premises and also objected to the admission in evidence of the articles mentioned, upon the ground that the search and seizure were unreasonable, illegal and void. The motion was denied and the objection overruled.

As concerns the search of Mrs. Hill's home the record shows that shortly after noon on April 24, 1964, one of the officers talked with Mrs. Hill at her place of employment concerning some guns that were in a trailer situate on her property. During this conversation Mrs. Hill was asked concerning the time of day she would be off work. After stating that the officers were parked in the area of her house when she got home from work on that day, she testified as follows:

"Q Now where were the officers parked, Mrs. Hill?

"A I believe they was parked just across the street from my house.

"Q Then after you got home did they come over to your house?

"A Yes. They did.

"Q Did you admit them to the house?

"A Yes. I did. I told them to come in.

"Q They weren't in the house when you got there?

"A No.

"Q Now then what happened after they got into the house?

"A Well, they said they was sorry they'd have to look around.

"Q Did you consent to that?

"A I said, 'You all just as well go ahead.' I says, 'You'll get a warrant anyhow.' I says, 'I've got nothing to hide.'"

Under count IV of the information it is charged that:

"The said Dillard Junior Haggard did on April 16th or April 17th, 1964, willfully, unlawfully, intentionally, feloniously and burglariously enter in the night-time between 7:30 P.M., April 16, 1964, and 12:20 A.M. April 17, 1964, the home of George Foultz, which residence is in the possession of and under the control of George Foultz, with the intent to commit larceny, said premises being on Mink Creek, Bannock County, Idaho."

In support of this count George B. Foltz testified that he and his wife left their home on Mink Creek Road between 7:00 and 7:30 P.M. on April 16, 1964, and returned about 12:30 A.M. April 17, 1964; that while they were gone during said period their home had been entered without permission and a number of articles had been taken therefrom. The witness identified a gun marked Exhibit G as being his gun which

was taken from his home during that interval.

The record discloses that at 9:30 P.M. April 23, 1964, the defendant filed with the Pocatello Police Department a stolen car report, identified as Exhibit J, relative to his 1956 Ford automobile, green and white in color, bearing license plate No. 1B 18 978. Defendant's said automobile was found by Officer Kuta at approximately 11:00 A.M. April 24, 1964, in the 900 block of East Landers Street, in Pocatello, at which time the doors of the car were closed but not locked. Among the articles found by said officer in the car was a 38 caliber pistol identified as Exhibit G, which was on the floor boards under the floor mat on the driver's side of the front seat. At the officer's direction the car was taken to the sheriff's garage for the purpose of preserving evidence such as finger prints.

. Defendant objected to the admission in evidence of Exhibit G upon the ground that no showing was made "that a search of that car was made with the consent of the owner of the car or with the consent of the principal driver of the car, which is Mr. Haggard, the defendant in this action." The objection was overruled.

Under count VI of the information the defendant is charged as follows:

"The said Dillard Junior Haggard did on April 23, 1964 between 6:40 and

8:40 P.M. of said day willfully, unlaw-- fully, intentionally, feloniously and burglariously enter in the nighttime in the home of Rex Richardson, 130 East Bryan, Pocatello, Idaho, which residence is in the possession of and under the control of Rex Richardson, with the intent to commit larceny."

As proof of this count, Edna Richardson, the wife of Rex Richardson, testified that her home at 130 East Bryan had been entered without permission between 6:35 P.M. and 8:45 P.M. on April 23, 1964; that upon returning home she saw footprints in the fresh snow leading away from her home; that a number of articles, mostly money, were at that time taken from her home. This witness identified a wallet (Exh. D), a red pouch (Exh. E) which when taken contained some church money, and a white pouch (Exh. F) which had contained about $50; that each of said exhibits belonged to her. The Exhibits D, E, and F were found in the defendant's automobile by Officer Kuta at the time he discovered defendant's car in the 900 block on East Landers Street in Pocatello after being reported as stolen (Exh. J), hereinbefore mentioned in our statement of facts relative to count IV.

The record shows that Exhibits D, E, and F were offered in evidence at the same time Exhibit G was being offered, and defendant made his objection thereto upon the same ground as he did relative to the admission of Exhibit G, which objection was overruled.

Appellant assigns as error the refusal to suppress the evidence consisting of the stolen property which he claims was obtained by unlawful searches and seizures in violation of his constitutional rights. Two searches are involved. We shall first consider the search of the house belonging to defendant's mother, where the fishing reel (Exh. C) was found. Appellant contends that implied coercion was used by the officers to gain entry to said premises.

Hereinbefore in this opinion we have quoted some of the testimony of Amy Hill which is pertinent to the question raised by this contention. In addition to such testimony the record discloses that Mrs. Hill had lived in her then home for about eleven years; on the occasion of the search she was with the officers in the basement of the home and in defendant's bedroom when and where they found the fishing reel (Exh. C) on the top of a wardrobe.

█ The record does show that earlier during that day one of the officers had secured Mrs. Hill's permission to look at a trailer house which was then parked in the driveway on her premises; the officer later returned to ask her if she knew that there were some guns in the trailer and also inquired of her at what time of the day she would get off from work. Mrs. Hill knew

that the men who came to her home after she had quit work were officers and she voluntarily told them "to come in." There is not the slightest evidence indicating that any deception whatever was on that occasion practiced by any of the officers and it is clear from Mrs. Hill's testimony that she expressly assented to let the officers "look around." There is no evidence to support a contention that she was being deceived or coerced when she so consented.

It is true the defendant was not present at the time of the search nor did he consent thereto. However, there is no claim that Mrs. Hill was not the owner of the premises searched or that she did not exercise such dominion and control thereof as ordinarily obtains with regard to one's dwelling and the premises adjacent thereto. In State v. Dunn, 44 Idaho 636, 258 P. 553, this court stated that when a person to whom the premises belongs does not object to the search, exhibits seized thereunder are admissible in evidence. A like question as is here presented was considered in State v. Hagan, 47 Idaho 315, 274 P. 628, wherein the court said:

"The evidence establishes that the purported possession of the barn asserted by the defendant was in subservience and submission to the power, authority, ownership, and possession of his mother; that he opened or left the barn open when she directed him to do so; that the only possession he exercised was her possession; that she consented to the search; and that he had no right of possession to negative such consent. Such search, made with her consent, violated no constitutional right of privacy or possession of the defendant, and there was no error in the ruling. State v. Dunn, 44 Idaho 636, 258 P. 553; Driskill v. United States, (C.C.A.) 281 F. 146; Moy Wing Sun v. Prentis, 148 C.C.A. 40, 234 F. 24; Gray v. Commonwealth, 198 Ky. 610, 249 S.W. 769."

It is generally recognized that the constitutional immunity from search and seizure may be waived by the voluntary consent of one in possession of the premises sought to be searched. In State v. Polson, 81 Idaho 147, 339 P.2d 510, we stated that a search warrant is not necessary where the owner of the property gives his consent to the search, and cited State v. West, 42 Idaho 214, 245 P. 85; State v. Kaiser, 49 Idaho 351, 288 P. 154; State v. Beach, 51 Idaho 183, 3 P.2d 539; State v. Spencer, 74 Idaho 173, 258 P.2d 1147.

A similar factual situation was involved in People v. Michael (1955), 45 Cal.2d 751, 290 P.2d 852, wherein the court stated:

"This is not a case in which entry was made pursuant to the supposed authority of an invalid search warrant.

[citing cases] Nor is it a case in which the officers entered without the permission or knowledge of the occupants [citing cases] or demanded the right to search without a warrant. (See, Amos v. United States, supra, 255 U.S. 313, 317, 41 S.Ct. 266 [65 L.Ed. 654]; United States v. Slusser, D.C., 270 F. 818, 819.) All that appears is that four officers went to defendant's home, identified themselves, and were admitted by defendant's mother. Within approximately a minute of their arrival they asked defendant if she had any narcotics, and all of the evidence was then voluntarily produced by the two women. Under these circumstances, to hold as a matter of law that the evidence was produced in response to an unlawful assertion of authority would seriously hamper officers in the reasonable performance of their duties. Thus, it is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes. Such inquiries, although courteously made and not accompanied with any assertion of a right to enter or search or secure answers, would permit the criminal to defeat his prosecution by voluntarily revealing all of the evidence against him and then contending that he acted only in response to an implied assertion of unlawful authority."

Whether in a particular case an apparent consent was in fact voluntarily given or in submission to an express or implied assertion of authority or coercion is a question of fact to be determined in the light of all the circumstances. The search having been made with owner's consent, we have concluded that the evidence was sufficient to justify the admission and use of the evidence discovered during the search complained of.

Reversal is sought on the contention that the search of defendant's automobile was illegal, having been made without a search warrant and before the arrest of the defendant, and that the evidence obtained as a result of the search should not have been admitted. This presents an issue concerning the admissibility in evidence of Exhibits D, E, F, and G.

Officer Kuta found defendant's car, which by the defendant had been reported stolen (Exh. J), parked some distance from where the defendant lived. Two of the exhibits were visible to the officer when he looked into the car and the remaining two were discovered after he opened the unlocked door of the car. In State v. Peterson, 81 Idaho 233, 340 P.2d 444, this court considered a similar situation and quoted with approval from 79 C.J.

S. Searches and Seizures § 66a, p. 831, as follows:

" 'The constitutional provisions against unreasonable searches and seizures do not prohibit a search without a search warrant that does not constitute a trespass; hence the obtaining of information by the eye, where it is not aided by a trespass, does not constitute an unlawful search * * *.' [citing cases]"

It is recognized as a general rule that wherever, during the progress of a bona fide search for other commodities, illegally possessed, whether with a search warrant or not, discovery is made of legal evidence of the possession of another thing, the possession of which is unlawful, the thing so found may be seized. 79 C.J.S., supra. In Gaskins v. State (Fla., 1956), 89 So.2d 867, the facts involved were that police officers came upon an unlighted and unattended truck parked near an intersection. The officers stopped to investigate what appeared to be a traffic hazard and in so doing looked inside the cab and discovered a number of envelopes containing money and slips located under the seat in the truck. Defendant returned to the truck shortly after the investigation had been commenced, and admitted ownership of the envelopes and their contents and was later charged with violation of the lottery laws.

In passing upon these facts the court stated:

"In the case before us the original search was perfectly reasonable and justifiable. Appellant's truck was parked at a darkened intersection, in the nighttime, without lights, its left wheels over on the paved road, with its windows open and unattended. The police officers were merely doing their duty when they stopped and investigated a vehicle under such circumstances. When they searched the vehicle, they were performing a duty incident to their responsibilities as police officers. It seems to us that it would be perfectly illogical to hold that under such circumstances in order to make a legal search of the vehicle, the police officers should be required to obtain a search warrant precedent to the search which was necessarily a component part of a complete investigation of the situation."

We therefore hold that the original search was reasonable and under the circumstances there was nothing unlawful about it, and we find that the evidence obtained in the course of the search was legally obtained and therefore properly admissible in the trial of this case.

Appellant contends the State failed to prove that he had a clear and conscious

possession of the stolen articles involved in the counts of which he was found guilty. We adhere to the early pronouncement of this court that in order to warrant a presumption of guilt it must be shown that the possession involves a distinct and conscious possession by the accused.

 This court has also repeatedly stated that unless possession of recently stolen property is satisfactorily explained, there arises a presumption of guilt. State v. Kombol, 81 Idaho 530, 347 P.2d 117; State v. Hewitt, 73 Idaho 452, 254 P.2d 677; State v. Haynes, 64 Idaho 627, 135 P.2d 300; State v. Gilbert, 65 Idaho 210, 142 P.2d 584. This defendant offered no explanation whatever regarding his possession of any of the stolen property involved in either count.

 It would unduly extend this opinion to quote the evidence which tends to establish appellant's possession of each article involved. The weight and credibility to be given such evidence is for the jury to determine and after a careful examination of the record we are satisfied that there is substantial competent evidence tending to establish such possession on the part of the defendant as justifies an inference of guilt by reason thereof.

 Appellant's contention that the court erred in failing to give his requested instruction No. 1 is without merit since the instructions given substantially covered that which was requested by defendant.

There is merit to appellant's contention that the State did not prove beyond a reasonable doubt that the burglary charge in count IV was committed during the nighttime. The fact that the lights were on in the burglarized home when the owner, Mr. Foltz, returned to his dwelling on the evening of the day the crime was committed, tends to show that it was committed after sunset. However Mr. Foltz testified that he may have left his home as early as 7:00 P.M. on the evening in question. Mr. Foltz also testified that as he left his home on that occasion he observed a car, which he later identified as being defendant's car, proceeding slowly along the road in front of his home and within 250 feet of his driveway. It is uncontradicted that sunset occurred at 7:14 P.M. on that day.

 There is no evidence whatever that defendant was seen entering, leaving or being in the dwelling at any particular time and there is nothing to show that the entry may not have been made immediately after Mr. Foltz's departure and during the daytime. This question has been considered by other courts and they have logically concluded that where there is nothing to show that the entry may not have been made, and the property taken, during the daytime, the jury is not warranted in finding that the entry was made in the nighttime. State

v. Dougherty (1960), 186 Kan. 820, 352 P. 2d 1031, 82 A.L.R.2d 640; State v. Fitzpatrick (1952), 125 Mont. 448, 239 P.2d 529; State v. Cone (1951), 171 Kan. 344, 232 P.2d 470; State v. Gunderson (1910), 56 Wash. 672, 106 P. 194; 13 Am.Jur.2d § 51, p. 352.

This record does not contain any evidence which establishes the time when the burglary occurred so that such time may be said to have been proven beyond a reasonable doubt by satisfactory evidence. Since the State failed to prove that the burglary was committed in the nighttime, it failed to prove one of the essential elements of the crime, as charged in the information, and the judgment of conviction cannot stand.

The judgment of conviction under counts III and VI of the information is affirmed.

The writer of this opinion to this point is of the view that the judgment of conviction under count IV of the information should be reversed and the cause remanded to the district court with directions to modify the judgment accordingly. My view regarding the disposition of said count IV is not shared by the other members of the court. However, in support of my view I refer to I.C. § 19–2311, which provides:

"Whenever a crime is distinguished into degrees the jury, if they convict the defendant, must find the degree of the crime of which he is guilty."

I am aware of the authority conferred by I.C. § 19–2821 to reverse, affirm or modify a judgment. However I believe it to be an extremely important distinction between the reduction of a sentence or striking out the illegal portion of a judgment and the modification of a verdict by reducing the degree of the crime. I concur in the following quoted excerpt from People v. Nagy (1926), 199 Cal. 235, 248 P. 906, to-wit:

"The evidence in our opinion is sufficient to sustain a judgment of conviction of arson of the second degree, and insufficient to sustain a conviction of arson of the first degree, as found by the jury, and this court has neither the constitutional nor statutory authority to modify or interfere with the verdict of the jury in any respect."

The above cited case was decided at a time when that state had a statute almost identical to I.C. § 19–2311. Since that time the California statute has been amended to specifically authorize the court to modify the degree of a crime in some cases.

Since under the law of this state the jury must determine the degree of the crime, I do not agree with the view that the jurisdiction of this court to review as stated in our state constitution, Art. 5, Sec. 9, or the authority to modify as stated in I.C. § 19–

## 230

2821 also provide authorization to invade the statutory duty and specific province of the jury.

TAYLOR, Justice (concurring and dissenting).

I concur in the opinion written by Justice KNUDSON on all points except as to the disposition to be made of count IV of the information, following reversal of the conviction of burglary of the first degree on that count.

■ A charge of first degree burglary necessarily includes a charge of second degree burglary. State v. Goodmiller, 86 Idaho 233, 386 P.2d 365 (1963); State v. Eubanks, 77 Idaho 439, 294 P.2d 273 (1956); State v. Vanek, 59 Idaho 514, 84 P.2d 567 (1938). See also, State v. Anderson, 82 Idaho 293, 352 P.2d 972 (1960). This being the law, a conviction of burglary of the first degree is also a conviction of burglary of the second degree; and a verdict finding the defendant guilty of burglary of the first degree is also a verdict finding the defendant guilty of burglary of the second degree.

■ Idaho Code § 18–1401 defines the crime of burglary. Under this statute the crime is committed upon the unlawful entry with the required intent regardless of the time of day or night. The time of day becomes important only to a determination of the degree of the offense, as provided by I.C. § 18–1402.

In the Eubanks case it was said:

"In many cases the prosecutor may be unable to establish the precise time of the entry, whether a few minutes before or a few minutes after sunset or sunrise. It would be a travesty to require him in such cases to allege the hour, and permit the defense to be made that the crime was committed at some other hour. Or, suppose the prosecutor mistakenly believed his proof would show a nighttime entry, and charged first degree—as would be his right and duty—if he fails to establish the hour, beyond a reasonable doubt, or the defense shows the entry occurred in the daytime, is a verdict of not guilty mandatory? The time of day does not change the crime from burglary to something else. Nighttime only aggravates the offense, § 18–1403 I.C., and is material only to the higher degree.

" 'It would be burglary in either case, whether committed at night or in daytime, and it cannot be correctly said that because the proof establishes the offense in its aggravated form it does not establish it in its less aggravated form. Where sufficient is proved to establish the offense, it would be alto-

gether illogical to say there was a failure of proof, or a variance between the allegations and proof, simply because more was proved than alleged.' Schwabacher v. People, 165 Ill. 618, 46 N.E. 809, at 811." 77 Idaho at 442, 294 P.2d at 274.

In obedience to the command of I.C. § 19–2311, the jury found the degree of the crime, that is, burglary of the first degree. The fact that this court finds the evidence insufficient to sustain the jury finding that the offense was committed in the nighttime does not affect or cast doubt upon the jury's verdict that the defendant was guilty of burglary of the second degree. In such case the statute authorizes this court to modify the judgment based upon the verdict by reducing the conviction from first degree to second degree. I.C. § 19–2821. This court has not hesitated to exercise such authority or to assert its inherent power to make the judgment conform to law and justice.

In People v. O'Callaghan, 2 Idaho 156, 9 P. 414 (1886), the defendant was convicted of murder of the first degree. This court considered that the indictment was insufficient to charge murder of the first degree, and modified the judgment by reducing the verdict to a conviction of second degree, saying:

"The indictment sufficiently charges murder in the second degree, and we are of the opinion that under and in virtue of the general power given to modify we should sustain the verdict, and treat it as a verdict of murder of the second degree, which is included in the first, and modify the judgment accordingly. We are not without precedents and authority in reaching this determination. Fouts v. State, 4 G. Greene, 500; State v. McCormick, 27 Iowa, 414; Johnson v. Com., 24 Pa. St. [386] 387." 2 Idaho at 160, 9 P. at 417.

In State v. Sprouse, 63 Idaho 166, 118 P.2d 378 (1941), the defendant was convicted of murder of the first degree. The court questioned the sufficiency of the evidence to sustain the conviction of murder of the first degree and, citing the inherent power of the court under constitution, art. 1, § 18, and the statute, I.C. § 19–2821, modified the judgment by reducing the defendant's conviction from murder of the first degree to voluntary manslaughter, and remanded the case to the trial court with direction to fix the punishment accordingly.

The fact that the statute, I.C. § 19–2311, requires the jury upon a verdict of guilty, and, I.C. § 19–2502, requires the court upon a plea of guilty, to determine

the degree of the offense, does not render such determination sacrosanct and remove it from the power and authority of this court to intervene where law and justice requires.

 In this case we find from the record that there was no ground for reasonable doubt of the defendant's guilt of burglary, as the jury by their verdict found. The only doubt which arises from the record concerns the time of day when the offense was committed. This doubt does not affect in the least the finality or conclusiveness of the jury's verdict of guilty of burglary. Since, because of such doubt, the verdict of first degree burglary cannot be sustained, in compliance with the statute, I.C. § 19–2105, the verdict must be given effect as a verdict of guilty of burglary of the second degree.

A majority of the justices concurring herein, the judgment as to count IV is modified by reducing the conviction to burglary of the second degree, and the cause is remanded to the district court with instructions to vacate the judgment pronounced on that count, and enter judgment thereon as on a conviction of burglary of the second degree.

McQUADE, C. J., and McFADDEN and SMITH, JJ., concur.