(May 8, 1913.)

## STATE, Respondent, v. CHARLES H. ALLEN and REECE C. CLEVENGER, Appellants.

[131 Pac. 1112.]

CRIMINAL LAW—SEPARATE TRIALS OF THE DEFENDANTS JOINTLY CHARGED—IDENTIFICATION OF EXHIBITS—NONRESPONSIVE ANSWERS —REMARKS OF COURT—FINANCIAL CIRCUMSTANCES OF DEFENDANT— CONVERSATIONS ESTABLISHING ALIBI—EVIDENCE OF GOOD CHARACTER —SUFFICIENCY OF EVIDENCE—NEWLY DISCOVERED EVIDENCE.

1. Under the provisions of sec. 7860, Rev. Codes, as amended by 1911 Sess. Laws (1911 Sess. Laws, p. 368), "when two or more defendants are jointly indicted or informed against for a felony or any criminal offense, the defendants may be tried separately or jointly in the discretion of the court." *Held*, that under this statute it was not an abuse of the discretion of the trial court to refuse to grant separate trials to defendants, where each of the defendants desired to be a witness for the other and also a witness in his own trial on his own behalf.

2. *Held*, that it was not error on the part of the trial court to admit a revolver holster in evidence in a prosecution for murder where the witness identifying the holster was shown the holster in

the presence of the jury and was asked if that was the revolver holster the defendant had, and the witness replied: "I think it is; I am not sure; it appears to be."

3. Where the attorney for the defendant on cross-examination of a state's witness in the trial of a criminal case has the witness produce an article of personal property and testify concerning it and tell where he got it and what he had been doing with it, it is error for the trial court to refuse to have the article marked for identification and retained in the possession of the court for the purposes of cross-examination and the inspection of the defendant and his counsel, or for any use to which defendant may legally apply the exhibit.

4. Where a witness on behalf of the state while on the witness-stand was asked the question, "Under what circumstances did you see him?" (referring to defendant), and the witness answers, "The Chinaman—the Chinese porter at my house pointed him out to me and told me to be careful of him," *held,* that the court did not err in denying a motion to strike the answer from the record.

5. Where a trial judge, after admonishing a jury before taking a recess in the course of the trial of a criminal case, said in the presence of the jury: "The court desires to say to counsel concerned in this case that he is of the opinion that too much time is being consumed in the examinations, as the same questions are being repeatedly asked many times and much needless repetition being indulged in, and that perhaps nine out of ten questions which have been asked are irrelevant and immaterial because of this continued and useless repetition," *held,* that the remarks of the court were not prejudicial to the rights of the defendant.

6. Where a defendant is on trial on the charge of murder and the evidence on the part of the state tends to show that the murder was committed in an attempt to commit robbery, and the state introduced evidence tending to show that defendant was "broke" and without any means, it would have been proper for the court to allow the defendant's offer to prove that he was in fact not "broke," but, on the contrary, had money and property of his own and was in good financial circumstances; and further, *held,* that the ruling of the court excluding such evidence was not reversible error.

7. Where a defendant, charged with the commission of a homicide, is endeavoring to establish an *alibi* and testifies that at the time the homicide occurred he was at another place and in his room and in bed, and that he heard a conversation between two persons in a room opposite his and details the conversation, and the persons who occupied the room opposite the defendant testify that they heard the shooting and that one of them opened the door and made remarks about the matter, and then the defendant seeks to have such witnesses detail the conversation had, and the court refuses to admit the evidence, *held,* that while it would not have been erroneous

for the court to have admitted a detailed account of the conversation for the purpose of corroborating the defendant's evidence and establishing his *alibi*, still the court's ruling excluding such evidence was not prejudicial error, for the reason that the evidence admitted covered substantially all the facts tending to corroborate defendant's evidence as to the *alibi*.

8. Upon a trial where a defendant is charged with murder, and the evidence tends to show that the murder was committed in an attempt to commit a robbery, and the court admits evidence as to the good reputation of the defendant for peace and quietude, there was no prejudicial error in the ruling of the court in thereafter excluding a general offer to prove the good reputation of the defendant "for truth and veracity, and honesty and integrity, morality and immorality, sobriety and inebriety."

9. A defendant who is charged with homicide should, as a rule, be allowed to show, if he can, that he has a good reputation in his community and among those who have known him both for peace and quiet and truth and veracity, in all cases where the evidence is circumstantial or the plea is one of self-defense and the defendant's truthfulness or honesty is brought in question.

10. Evidence in this case considered, and *held* sufficient to support a verdict of conviction.

11. Showing made in this case for a new trial on the grounds of newly discovered evidence, *held* insufficient to require the granting of a new trial.

APPEAL from the District Court of the Fourth Judicial District for Blaine County. Hon. Edward A. Walters, Judge.

Prosecution on the charge of murder. Verdict and judgment of conviction. Defendants appeal. *Affirmed.*

C. M. Booth, W. P. Guthrie and R. M. Angel, for Appellants.

Appellants were witnesses for each other, and being at the same time a witness and a defendant, the force and effect of the testimony of each was greatly lessened, by reason of interest, under the instructions of the court that "the jury have the right to take into consideration the fact that they and each of them are interested in the result of the trial. . . . . " (*People v. New York City Super. Ct.,* 10 Wend. (N. Y.) 285; *Detroit Tug Co. v. Wayne Cir. Judge,* 75 Mich. 360, 42 N. W. 968.)

The expression ''and told me to be careful of him'' was unresponsive, hearsay testimony, and prejudicial to appellants. (*People v. McCrea,* 32 Cal. 98; Underhill on Criminal Evidence, 2d ed., par. 216.)

The remarks of the court in the presence of the jury, during the cross-examination by appellants of state's witness Dot Allen, were prejudicial to defendants. (*State v. Philpot,* 97 Iowa, 365, 66 N. W. 730; Underhill on Criminal Evidence, par. 215.)

Accused had a right to show that the motive charged did not in fact exist. (*People v. Mead,* 1 Wheel. Cr. (N. Y.) 36; *State v. Edwards,* 34 La. Ann. 1012.)

It is for the jury to determine the presence or lack of motive for the particular crime charged, as the absence of motive revealed is a circumstance to be duly considered in weighing the question of guilt. (21 Cyc. 919; 8 Am. & Eng. Enc. 291; Wharton on Crim. Ev., 10th ed., p. 1646; *State v. Coleman,* 20 S. C. 441; *Preston v. State,* 8 Tex. App. 30.)

The rule as to a defendant's right under the plea of *alibi* is that he may show any facts which tend to prove that he could not have been, or was not, present at the place and time of the offense. (12 Cyc. 404, 405; Wharton's Criminal Evidence, 10th ed., p. 1835; *State v. Hayward,* 62 Minn. 474, 65 N. W. 66.) It was error to exclude testimony that would tend directly to weaken the case made by the state—testimony tending directly to establish an *alibi* and discredit the state's case. (*People v. Hare,* 57 Mich. 505, 24 N. W. 843–848; Underhill Crim. Ev. 148; Greenleaf on Evidence, 14th ed., par. 100; Wharton's Criminal Ev., 10th ed., par. 951, p. 1835; 14 Cent. Dig. 1289, 849; *Shaw v. People,* 3 Hun (N. Y.), 272; *People v. McCrea,* 32 Cal. 98; *People v. Estrado,* 49 Cal. 171; *Smith v. Whittier,* 95 Cal. 279, 30 Pac. 532; *People v. Barker,* 144 Cal. 705, 78 Pac. 266; *State v. Delaney,* 92 Iowa, 467, 61 N. W. 189; *State v. Bedard,*.65 Vt. 278, 26 Atl. 719; Jones on Evidence, par. 300, p. 378.)

In not being permitted to prove their good character, particularly as to honesty and integrity, appellants were deprived of the benefit of evidence which was clearly admissible and of

the greatest importance. (*Cancemi v. People*, 16 N. Y. 501; *Saye v. State*, 50 Tex. Cr. 569, 99 S. W. 551; *State v. Cunningham*, 111 Iowa, 233, 82 N. W. 755; *State v. Parker*, 7 La. Ann. 83; *Commonwealth v. Winnemore*, 1 Brewst. (Pa.) 356; 14 Cent. Dig. 841; *People v. Ashe*, 44 Cal. 288; *Kee v. State*, 28 Ark. 155; *Klehn v. Territory*, 1 Wash. 584, 21 Pac. 31, 32.)

Evidence of good character is independent evidence, and of itself may raise a reasonable doubt and of itself require the jury to find the accused not guilty. (*State v. Kinley*, 43 Iowa, 294; *United States v. Jackson*, 29 Fed. 503; *Remsen v. People*, 43 N. Y. 6; *Kilpatrick v. Commonwealth*, 31 Pa. 198; *State v. Beebe*, 17 Minn. 241; Underhill on Crim. Ev., sec. 79; Wharton's Crim. Ev., sec. 67; *People v. Garbutt*, 17 Mich. 9, 97 Am. Dec. 162; *Commonwealth v. Leonard*, 140 Mass. 473, 54 Am. Rep. 485, 4 N. E. 96; *Edgington v. United States*, 164 U. S. 361, 17 Sup. Ct. 72, 41 L. ed. 467.)

J. H. Peterson, Attorney General, and J. J. Guheen and T. C. Coffin, Assistants, for the State.

Where two defendants are jointly indicted or informed against, a severance is not a matter of right. (*Ball v. United States*, 163 U. S. 662, 16 Sup. Ct. 1192, 41 L. ed. 300; 12 Cyc. 505, and cases cited; *State v. Johnson*, 116 La. 856, 41 So. 117; *In re Wellington*, 1 City H. Rec. (N. Y.) 144; *Ball v. United States*, 163 U. S. 662, 16 Sup. Ct. 1192, 41 L. ed. 300.)

Evidence need not be positive to permit its reception, nor need identification of exhibits be positive to permit of their admission. (Underhill on Criminal Evidence, 2d ed., sec. 47; *Mitchell v. State*, 94 Ala. 68, 10 So. 518, 520; *State v. Brabham*, 108 N. C. 793, 13 S. E. 217.)

When a motion to strike an answer on the ground that it is not responsive is directed at the whole answer, and any part thereof is responsive, the motion is properly denied. (*Benjamin v. New York El. R. Co.*, 63 Hun, 629, 17 N. Y. Supp. 908; *People v. Munroe*, 4 Cal. Unrep. 66, 33 Pac. 776, 778; *Delaney v. State*, 51 N. J. L. 37, 16 Atl. 267; *Tagert v. State*, 143 Ala. 88, 111 Am. St. 17, 19, 39 So. 293.)

It is the duty of the trial court to conduct a trial in an orderly manner, and any remarks of the court in the course of the trial aimed at that purpose are proper. (*State v. Roland,* 11 Ida. 490, 495, 83 Pac. 337; *State v. Duestrow,* 137 Mo. 44, 38 S. W. 554, 565, 39 S. W. 266; *State v. Brown,* 100 Iowa, 50, 69 N. W. 277, 278; 12 Cyc. 538.)

Testimony as to the financial standing of the defendant is not admissible to show absence of motive. (*Reynolds v. State,* 147 Ind. 3, 46 N. E. 31, 32; *Colter v. State,* 37 Tex. Cr. Rep. 284, 39 S. W. 576.)

Conversations are not part of the *res gestae* for proving an *alibi.* (*People v. Kalkman,* 72 Cal. 212, 13 Pac. 500, 502.)

If any portion of an offer of testimony is objectionable, the whole offer is properly refused. (*Presser v. State,* 77 Ind. 274; *State v. Lawrence,* 70 Vt. 524, 41 Atl. 1027.)

Where character evidence is offered, it should be confined to the trait involved in the crime charged, and the trait involved in the case at bar is "peace and quietude." (*Basye v. State,* 45 Neb. 261, 63 N. W. 811, 818; *People v. Cowgill,* 93 Cal. 596, 29 Pac. 228; *State v. King,* 78 Mo. 555; *Morgan v. State,* 88 Ala. 223, 6 So. 761; *People v. Albers,* 137 Mich. 678, 100 N. W. 908, 912; *Hall v. State,* 132 Ind. 317, 31 N. E. 536; *Pettis v. State* (Tex. Cr. App.), 150 S. W. 790, 792; *Kahlenbeck v. State,* 119 Ind. 118, 21 N. E. 460.)

Where there is a substantial conflict in the evidence and there is any evidence to sustain the verdict, it will not be disturbed. (*State v. Nesbit,* 4 Ida. 548, 43 Pac. 66; *State v. Silva,* 21 Ida. 247, 120 Pac. 835.)

AILSHIE, C. J.—The defendants were jointly tried and convicted on the charge of murder, and were sentenced to life imprisonment in the state penitentiary. This appeal is from the judgment and an order denying a motion for a new trial.

The homicide occurred in a house of ill-repute in the town of Hailey on the night of September 21, 1911. A robbery was attempted and resulted in the killing of a man named Crowley, who was a piano player in this resort. The house was entered by two masked men, one wearing a tall black hat

and a red mask and the other a cap and a black mask. Two witnesses, Lorenzo Swift and Charles Crawford, testified that they were accomplices, and that they, together with the appellants, Allen and Clevenger, planned to rob the inmates of the Dot Allen resort, and that in pursuance of this plan they went with the appellants on the night in question to the Dot Allen house, and in accordance with the prearranged plans Swift and Crawford remained outside as guards while Allen and Clevenger entered the house for the purpose of perpetrating the robbery.

A number of errors have been assigned, but we shall not give separate consideration in this opinion to all of them.

1. Defendants made application to the trial court for separate trials and the court denied the motion. This ruling is assigned as error. It is claimed that the court abused his discretion in denying this request. Sec. 7860 of the Rev. Codes, as amended at the 1911 Session (1911 Sess. Laws, p. 368), provides that "when two or more defendants are indicted or informed against for a felony or for any criminal offense, the defendants may be tried separately or jointly in the discretion of the court." The principal argument made against the ruling of the court is that each defendant desired to become a witness in his own behalf and each one desired the other as a witness on his trial, and that to try them both together and have them both defendants in the same action tended to weaken their evidence before the jury. There is perhaps some force in this argument, but it is not sufficient to justify us in holding that the trial court abused his discretion in denying them separate trials. (*Ball v. United States*, 163 U. S. 662, 16 Sup. Ct. 1192, 41 L. ed. 300; *State v. Johnson*, 116 La. 856, 41 So. 117; 12 Cyc. 505.)

2. The accomplice Crawford on the witness-stand was handed a revolver holster and asked if it was the holster Clevenger had his gun in when he left the house that night preceding the attempted robbery, to which the witness answered, "I think it is; I am not sure; it appears to be." On this identification the holster was introduced in evidence over the objection of the defendants, and they now assign the

ruling of the court as error. ' The witness had previously
testified positively that Clevenger carried his gun in a holster
buckled around him, and while he was not positive that this
was the particular holster he wore he gave it as his opinion
that it was. The identification is not such as should be re-
quired before an exhibit is introduced, but its admission under
these circumstances could certainly do the defendants no
harm. There is no error in the court's ruling in this respect.
(Underhill, Criminal Evidence, 2d ed., sec. 47; *Mitchell v.
State,* 94 Ala. 68, 10 So. 518.)

3. While the accomplice, Crawford, was on the witness-
stand, and during his cross-examination by counsel for de-
fendant, he produced from his pocket a red handkerchief,
knotted, and testified that he purchased it at Richfield, that
he did not have it in Hailey and that he and Swift tied knots
in it while in jail. Thereupon counsel for defendant asked
to have the handkerchief marked for identification for use on
cross-examination, to which counsel for the state objected and
the objection was sustained by the court. This action of the
court is assigned as error. Counsel for appellants insist that
they had a right to make inquiry as to this handkerchief and
to have it retained in the custody of the court. We are of
the opinion that the ruling of the court was erroneous. When
an article is presented in court before the jury, and either
party desires to have it marked for identification and retained
in the custody of the court for the purpose of questioning
witnesses concerning it, that right should be accorded the
party who requests it. If a witness who produces an article
in court is allowed to retain the possession of it and carry
it away from the courtroom, it may become impossible to
again get hold of it or to be certain that the same article
is again produced. This ruling of the court, however, was
not such an error as could have been prejudicial to the de-
fendants. They did not ask any other witnesses about this
handkerchief or pursue the inquiry any further. The evi-
dence elicited fails to show that it had any relevancy whatever
to the matters about which the witness was testifying or to any
material fact in the case. No contention was made that this

was the handkerchief worn by one of the masked men on the
night of the homicide, and no attempt was made to show any
such fact. We must assume that the jury were men of
average intelligence who were trying to discharge their duties
conscientiously as jurymen. With such men the evidence in-
troduced on this subject and the incidents recited in the record
concerning the same would certainly have no weight or bear-
ing, and could in no way prejudice defendant's rights.

4. When the state's witness, Dot Allen, was being cross-
examined, she was asked the question, "Under what circum-
stances did you see him [Allen]?" to which she answered,
"The Chinaman—the Chinese porter at my house pointed him
out to me and told me to be careful of him." Defendant
moved to strike this answer out, on the ground that it was
not responsive to the question, and the motion was overruled.
The answer was not entirely responsive, and yet, assuming
the statement contained in the answer to be true, it is the
kind of answer that an average witness would naturally give
to such a question concerning one whom they had first seen
under such circumstances. There was no error in the ruling
of the court on this motion.

5. During the course of the trial, and as the court was about
to admonish the jury before a noon recess, the judge said:
"The court desires to say to counsel concerned in this case
that he is of the opinion that too much time is being consumed
in the examinations, as the same questions are being repeat-
edly asked many times and much needless repetition being
indulged in, and that *perhaps nine out of ten questions which
have been asked are irrelevant and immaterial because of this
continued and useless repetition.*" Counsel excepted to this
statement of the court, and now complains of that part of the
statement which we have italicized. There was no error in
this statement by the court. It was made general and without
reference to any particular counsel or to either side of the
case, and it was not an expression of an opinion of the court
as to the weight of the evidence. It had reference to the
questions counsel were asking. The court made no suggestion
that the evidence elicited by the questions was not material,

but suggested that they were repetitions and that they were "irrelevant and immaterial because of this continued and useless repetition." (See *State v. Roland,* 11 Ida. 490, 83 Pac. 337; *State v. Brown,* 100 Iowa, 50, 69 N. W. 277.)

6. Assignments Nos. 6, 7, 8, 9, 10, 11, 12 and 13 have reference to the rulings of the court in admitting and rejecting evidence. There was no error in the rulings of the court to which these assignments are directed, and the questions involved are not of such consequence as would justify their detailed consideration in a written opinion.

7. Assignment No. 14 is directed against the ruling of the court in sustaining the state's objection to a question asked of defendant Clevenger on direct examination as to the nature, extent and character of his resources. The state had shown that the homicide was committed as the result of an attempted robbery or holdup. The defendant sought to show that he was in comfortable, financial condition and by that means to show that there was no motive for a robbery. The argument advanced in support of this assignment of error is that poverty and hunger and want are strong incentives to crime, and especially to the crime of robbery, and that since the state had shown in this case that the real crime that was planned and that defendants were trying to carry out was that of robbery and that defendant was "hard up and broke," the defendant might show lack of motive to commit the crime of robbery by showing that he had plenty of money and property of his own and that he was not pressed by hunger or "short" of money, as claimed by the state. Counsel cite the case of *Jacob v. Esau,* XXV, Gen. 29, as showing what hunger will drive men to do. This is persuasive, and there is an element of merit in the contention, but it would be a very dangerous rule to adopt and an erroneous conclusion to reach to suppose those who are hungry or "broke" are the only ones who commit crime,—even the crime of robbery. Of course, those who are in better circumstances frequently adopt an easier, more genteel, and less dangerous method of robbing their victims than that of going out with a six-shooter and holding them up, but the results accomplished amount to the

same thing. The authorities, so far as they have been called to our attention, are adverse to appellant's contention.

A very similar question arose in *Reynolds v. State*, 147 Ind. 7, 46 N. E. 33, and the court, after discussing the principle involved and determining it adversely to appellant's contention, said: ''Among the motives recognized as impelling men to commit crime is the desire of gain. . . . . This motive, however, has influenced the conduct of rich persons as well as poor persons. Men do not rob or steal except as they have a desire to do so, but such desire does not come so much from the poverty of the individual as from the absence of a moral sense, and from the desire to possess at all hazards something that does not belong to him.'' (See, also, *Colter v. State,* 37 Tex. Cr. 284, 39 S. W. 576.) The court's ruling did not deprive defendants of any substantial right.

8. Assignments 15 and 16 are directed against the ruling of the court in sustaining the state's objections to questions asked the witnesses Perkins and Butler as to a conversation had between them at the Rorem rooming-house in Hailey, immediately following the firing of the shot at the Dot Allen house on the night of this homicide. The defendants testified that they were in their room at the Rorem rooming-house when this trouble took place at the Dot Allen house, and that about midnight they heard the door of the room across the hallway from them open and that two men seemed to be discussing a shooting that had occurred, and that one appeared to come to the door and make the remark that ''something is going on down town, either a robbery or a holdup or someone killed''; that the person who made this remark then went back into the room and closed the door, and that they heard certain remarks made by one of the occupants of the room at the time the door was closed. The defendants testified that they did not know who occupied this particular room that night and did not know who the persons were who engaged in the conversation referred to. The defendant then called the witnesses Perkins and Butler, who had occupied this particular room on the night of this homicide. Perkins lived in the country some distance from Hailey and Butler resided

at Corral, Idaho, and was a blacksmith at that place.    They occupied the room opposite the room occupied by appellants on the night of this occurrence.    They were not acquainted with appellants at the time of this difficulty.    These witnesses both testified that they occupied the same room at the Rorem rooming-house that night, and that about midnight they heard some shots fired and that immediately after the shots were fired they had engaged in a conversation about the shooting, speculating as to what it was all over; that Perkins got out of bed and opened the door and made some statement while he was in the hallway, and that after Perkins came back into the room and closed the door they heard some talking in the building and that it sounded like it was in the room opposite the one occupied by them.    Each of these witnesses started to detail the conversation they had at the time they heard these shots, and counsel for the state objected and the court sustained the objection, and this ruling is the cause of the complaint in assignments 15 and 16 under consideration.    The evidence given by these two witnesses tended to corroborate the appellants as to their *alibi*, and the testimony as given by them indicates that they did engage in a conversation about the shooting and that they did so immediately after they heard the shots fired.    It also shows they occupied the room across the hallway from the room occupied by appellants.    A detailed statement of the conversation would not have added materially to this corroboration.    Of course, had these witnesses testified to making substantially the same remarks as the defendants testified they heard, it would have tended to show that the defendants were close by at the time this conversation took place and that they heard the conversation had between these two witnesses.    (*State v. Delaney,* 92 Iowa, 467, 61 N. W. 189; *People v. Hare,* 57 Mich. 505, 24 N. W. 843; *State v. Hayward,* 62 Minn. 474, 65 N. W. 66.) We are of the opinion, however, that the evidence admitted covered substantially what could have been accomplished by detailing the conversation had between the witnesses.    It is clear that that conversation would have been wholly inadmissible for any purpose except in so far as it tended to establish

the *alibi* set up by the defendants.    We cannot say the court's ruling was erroneous in this respect.

9. Assignments 17 and 18 raise the correctness of the ruling of the trial court on the offer of appellant with reference to character evidence. When defendants had the witness George Johns on the stand, they asked him as to the general reputation of the defendant Clevenger, where he resided, for *honesty and integrity,* to which the court sustained an objection. Defendant's counsel then made the following offer: "We now offer at this time to prove that the reputation for truth and veracity, and honesty and integrity, morality and immorality, sobriety and inebriety of the defendants is good." Whereupon the court denied the offer. This ruling of the court was apparently made on the theory that the defendant's reputation for *truth and veracity,* or *honesty and integrity,* or *morality or immorality,* or *sobriety and inebriety* was not in issue. The court, however, had already admitted evidence on the part of the defendant Clevenger tending to show his good reputation for "peace and quietude," and disallowed the next question, which went to the reputation of the same defendant for "honesty and integrity." The court evidently took the view that since this was a trial for murder that the real trait of character that was involved was that of the *peace and quiet* of the defendant; that is, as to whether he had been a peaceable, orderly and law-abiding citizen. On the other hand, the court must have considered that the issue on trial did not primarily involve the reputation of the defendants for honesty and integrity. Technically and theoretically, I presume the trial court was entirely correct in his ruling, but it seems to us that courts ought not to be too particular, technically or theoretically, in these matters, as juries are not going to distinguish very much between these different phases of a man's reputation when he is on trial for his life. If a man ever has any use for a good reputation or it can ever serve him, it is certainly at a time when he is on trial for his life charged with having taken the life of a human being, and it is at such a time that he ought to be accorded the privi-

lege and opportunity of introducing the evidence of those who have been acquainted with him and know his general reputation, not merely for peace and quietude but as well for truth and veracity and honesty and integrity. A man who has borne a good reputation in his community and among those who have known him should, as a rule, be allowed to have evidence of such fact go to the jury in a case of homicide, where the evidence is circumstantial or the plea is self-defense and the defendant's truthfulness or honesty is brought in issue. (*State v. McGreevey*, 17 Ida. 453, 105 Pac. 1047.)

In the case at bar, the charge made by the information primarily involved the character of the defendants for peace and quietude or their general attitude toward individuals, society and the laws of the land. On the other hand, when it is remembered that the principal evidence produced by the state disclosed that this crime was committed in an attempt primarily to commit the crime of robbery, it becomes evident that the charge as disclosed by the evidence in a large measure involved the character of these defendants with reference to honesty and integrity. While we think it would have been eminently proper for the court to have admitted the evidence offered touching the reputation of the defendants for honesty and integrity as well as peace and quietude, we do not think the ruling of the court deprived the defendant of any substantial right or was prejudicial to his defense.

10. The next assignment is directed against the sufficiency of the evidence to support the verdict. We shall not enter into a discussion of the evidence in this opinion. There is no doubt in our minds but that there was sufficient evidence introduced to support the verdict and judgment.

11. The newly discovered evidence set up in the affidavits for a new trial was not such as would require granting a new trial or would likely have produced a different result had the evidence been produced on the trial. Much of this would not have been admissible; part of it would have been only cumulative; while other affidavits consisted of mere contradictions

and impeachments. The showing made was not of such a character as to call for a new trial.

The judgment should be affirmed, and it is so ordered.

Stewart, J., concurs.

Sullivan, J., sat at the hearing but did not participate in the decision.