339 P.2d 510

**STATE of Idaho, Plaintiff-Respondent,**

v.

**James POLSON and Betty Ann Johnson, sometimes known as Betty Nan Lanier, Defendants-Appellants.**

No. 8589.

Supreme Court of Idaho.

April 22, 1959.

Vernon K. Smith, Boise, for appellants.

Frank L. Benson, Atty. Gen., and Robert D. Wennergren, Asst. Atty. Gen.; Graydon W. Smith, former Atty. Gen., Alfred C. Hagan, former Asst. Atty. Gen., James M. Cunningham, former Pros. Atty., Twin Falls County, on the brief, for respondent.

SMITH, Justice.

The information charges appellants with the crime of second degree burglary committed on or about January 22, 1957, in Twin Falls County by daytime burglarious entry of Wilson-Bates Appliance Company store in Buhl.

Appellants stood trial and the jury found them guilty as charged. They have appealed from the judgment of conviction; also from the order denying their motion to suppress evidence and from the order denying their motion for a new trial.

The evidence fairly reflects the facts hereinafter set forth.

January 22, 1957, the sheriff's office in Twin Falls County received information relative to a movie projector allegedly stolen from a certain dealer in Buhl in said county. This dealer waited upon one of appellants but did not sell them a projector. After they left his store, he followed them out

and looked into their automobile. He did not see the projector. The Twin Falls County officers transmitted information relative to this taking, to the King Hill Port of Entry station and the officer there in charge relayed it to the police officers of Glenns Ferry.

Between 7:15 and 7:30 P.M., that evening, Chief of Police Taylor, of Glenns Ferry, and Deputy Sheriff Ross of Elmore County, apprehended appellants riding in a Ford automobile, driven by appellant Polson, on U. S. Highway 30 near Glenns Ferry.

The officers informed appellants that the purpose of stopping them was to ascertain if they had a movie projector. Officer Ross asked permission to look into the car but appellant Polson refused a search without a search warrant. Appellants then consented to return to King Hill Port of Entry some 8 miles easterly from Glenns Ferry.

At King Hill the officers ascertained that the automobile operated by appellants was registered in the name of appellant Johnson in the State of Idaho, though State of Montana license plates were on the car.

The officers, at King Hill, conversed by telephone with the sheriff's office in Twin Falls County and discussed the matter of obtaining a search warrant; thereupon both appellants consented to a search of the automobile. Appellant Polson opened the door of the automobile, took out suitcases and other "stuff", and aided the officers in looking through the car. They did not find the movie projector. Officer Taylor then testified:

"A. There was quite a number of electrical appliances, electric drills, coffee maker, toaster, tea maker and portable radio. * * * We listed those articles in there for our protection."

Deputy Sheriff Pryor, of Twin Falls County, returned appellants from King Hill to Twin Falls about 11:00 P.M., the evening of January 22nd, placing them under arrest on suspicion of burglary. Sheriff Benham, of Twin Falls County, stated: "The officers * * * had been notified they were suspected of stealing a movie projector out of a store at Buhl, and that is what they were picked up on and brought to Twin Falls for." He told appellants that night, "I was going to hold them on this deal at Buhl, this stuff taken out of a store down there that they were accused of taking." He indicated to appellants that night, "I would have the night man watch the car and the next morning take all the stuff out of the car, and they agreed to that, both of them."

"Q. Did Mr. Polson agree to that? A. He agreed that was all right.

"Q. Did Miss Johnson agree to that? A. Yes."

Appellants continued in the custody of the sheriff.

The next morning the sheriff's office received information from Chief of Police Kendrick of Buhl that a portable Philco radio had been taken the day before from Wilson-Bates Appliance store in Buhl. After receiving that information the officers, upon investigating the contents of appellants' automobile, and the various electrical appliances of some twelve in number, found and identified the referred-to radio. The alleged felonious taking of this radio furnished the basis of the charge against appellants and their conviction.

Appellants assert error of the trial court in refusing their motion to suppress evidence, viz., the electric appliances taken from their automobile. They maintain that they were not legally arrested, therefore no right of search without search warrant attained.

▆ The facts show that the law enforcement officers of Glenns Ferry, based upon information of the alleged burglarious taking of the movie projector, stopped appellants' automobile, and apprehended appellants, which resulted in their being remitted to the custody of the sheriff of Twin Falls County.

I.C. § 19–603 reads in part:

"A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

"1. For a public offense committed or attempted in his presence.

"2. When a person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it.

"4. On a charge made, upon a reasonable cause, of the commission of a felony by the party arrested."

The arresting officers had sufficient facts within their knowledge to make the arrest. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; People v. Duroncelay, 48 Cal.2d 766, 312 P.2d 690. The officers arrested appellants on the charge of the Twin Falls County officers upon reasonable cause, of the commission of a felony by the parties arrested. Draper v. United States, supra.

▆ Generally, an officer may, without a warrant, arrest a person whom he has probable cause to believe guilty of a felony. 6 C.J.S. Arrest § 6 b(2), p. 587. "Probable cause must, in this connection, mean reasonable ground of presumption that the charge is, or may be, well founded; * * *." Wood v. United States,

16 Pet. 342, 41 U.S. 342, at page 366, 10 L. Ed. 987, 996

■ Reasonable cause to believe that an accused has committed a felony is a test of the arresting officer's right to arrest. I. C. § 19–603; Helgeson v. Powell, 54 Idaho 667, 34 P.2d 957.

■ The definition of "reasonable cause" is the possession of such information as would lead a man of ordinary care and prudence to believe or entertain honest and strong suspicion that a felony had been committed by appellant. State v. Autheman, 47 Idaho 328, 274 P. 805, 62 A.L. R. 195; Helgeson v. Powell, supra.

"The officer, * * * need not necessarily have personal knowledge of the facts constituting the offense, in the sense of having seen or witnessed the offense himself, but he may, where there are no circumstances known to him which materially impeach his information, acquire his knowledge from information imparted to him by reliable and credible third persons, or by information together with other suspicious circumstances." 6 C.J.S. Arrest § 6d(2) (a), p. 599.

We conclude that the arrest was lawful.

■ The arrest being lawful the rule applicable to the search and seizure is expressed in State v. Conner, 59 Idaho 695, 704, 89 P.2d 197, 201, as follows:

"Search and seizure, made incidental to a lawful arrest, is not prohibited as being unreasonable within the meaning of our constitution, art. 1, § 17, and evidence seized is not thereby rendered inadmissible. State v. Myers, 36 Idaho 396, 211 P. 440; State v. Arregui, 44 Idaho 43, 254 P. 788, 52 A.L.R. 463; State v. Arnold, 52 Idaho 349, 15 P.2d 396."

See also State v. Bock, 80 Idaho 296, 328 P.2d 1065; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653.

■ Consent of both appellants rendered additional validity to the search and seizure. A search warrant is not necessary where the owner of the property gives his consent to the search. State v. West, 42 Idaho 214, 245 P. 85; State v. Hagan, 47 Idaho 315, 274 P. 628; State v. Kaiser, 49 Idaho 351, 288 P. 154; State v. Beach, 51 Idaho 183, 3 P.2d 539; State v. Spencer, 74 Idaho 173, 258 P.2d 1147.

■ Appellants argue that they were improperly held by the officers since the only complaint had to do with a missing movie projector from a dealer in Buhl; whereas, not until the following day did the officers obtain information that the Philco portable radio allegedly had been taken from Wilson-Bates Appliance store in Buhl and that other articles allegedly had been taken from other stores in Buhl, by parties ostensibly

meeting appellants' descriptions. Appellants therefore contend that the articles obtained from the search, including and in addition to the portable radio, cannot be used as a foundation for the prosecution of appellants, since they were arrested for an allegedly different crime, viz., the alleged burglarious taking of a movie projector.

■ The rule is otherwise in this state and well stated in State v. Proud, 74 Idaho 429, 434, 262 P.2d 1016, 1019, amply supported by authorities, as follows:

"The fact that appellant was charged with and convicted of the commission of a crime other than the one for which she was arrested and a search and seizure were had under such search warrant, or even incident to a legal arrest without a search warrant, does not of itself render the property seized incapable of being admitted as evidence upon prosecution for the subsequent crime charged if such evidence is otherwise competent. Property seized under a valid arrest, either with or without a search warrant, but as incidental to a lawful arrest, may be used in the prosecution of such person for a crime other than the one for which he or she was arrested or for which a search warrant was issued. State ex rel. Fong v. Superior Court of King County, 29 Wash.2d 601, 188 P.2d 125, certiorari denied 337 U.S.

956, 69 S.Ct. 1525, 93 L.Ed. 1755; State v. McKindel, 148 Wash. 237, 268 P. 593; State v. Deitz, 136 Wash. 228, 239 P. 386; Smith v. State, 215 Ind. 629, 21 N.E.2d 709; Haverstick v. State, 196 Ind. 145, 147 N.E. 625; Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399."

■ Appellants next contend that the trial court erred in admitting in evidence Plaintiff's Exhibit D, the coffee maker, Exhibit L, the toaster, Exhibit O, the slip-on sweater, Exhibit Q, the plastic bag, and Exhibit P, the tooled shoes.

Appellants contend that the exhibits were not properly identified. We shall refer to the evidence showing sufficient identification of those exhibits.

First, Exhibit D, the coffee maker. The assistant manager of Greenawalt's, Inc., Twin Falls, identified appellant Polson as having been in the store January 22nd, inquiring about fishing tackle. The witness identified an electric Sunbeam coffee master, Plaintiff's Exhibit D, his testimony appearing:

"Q. Do you know whether any identifying marks are on this coffee master that you recognize? A. Yes, sir. This is our price tag here, and this is a lady's handwriting that worked at our store at that time.

"Q. How do you know it is your price tag? A. That's Greenawalt's right there plainly written. * * * It's made especially for our store.

* * * * * *

"Q. Did you observe a Sunbeam coffee maker * * * marked with an identical tag displayed on this display shelf on January 22nd? A. Yes, sir. A coffee pot exactly like that was sitting on that display.

* * * * * *

"A. * * * It was missing the next morning.

"Q. Did you sell any coffee pots to Mr. Polson? A. No, sir, I didn't."

The Sunbeam coffee maker, Plaintiff's Exhibit D, was properly admitted in evidence.

Plaintiff's Exhibit L, the toaster. An employee of Western Auto Supply Store in Buhl, identified appellants as having been in his store January 22nd. He waited on appellant Polson, selling him a sheet of sandpaper. He testified:

"Q. Did you carry Sunbeam toasters of this type [Plaintiff's Exhibit L] in your store on January 22nd of this Year? A. Yes.

"Q. I will ask you to examine this toaster and state if you see any identifying marks on it? A. I think possibly the only identification would be the price tag or the price up here in the corner.

* * * * * *

"Q. Is it written on with black crayon? A. Grease pencil; it is black.

"Q. In the manner of running your store do you sometimes price toasters by placing the price with a grease pencil on it? A. Yes, we do.

* * * * * *

"Q. * * * What price do you have on that? A. $27.50.

"Q. Do you recognize whose writing that $27.50 is? A. Well, it looks like my writing.

* * * * * *

"Q. Where do you carry these electric toasters in your store? A. In the front of the store by the front door just to the right as you come in; * * * on the glass shelves there.

* * * * * *

"Q. How many did you have there? A. We had two.

"Q. Were they just like this? A. Yes.

* * * * * *

"Q. How did you determine that a toaster was missing? A. We checked. When the officer came in that night we checked; up front where we had two

there was only one on the glass shelf. Where there had been one there were dust marks.

\*     \*     \*     \*     \*     \*

"Q. Did you sell anything to either of these two parties other than the one sheet of sandpaper? A. No, sir."

The Sunbeam toaster, Plaintiff's Exhibit L, was properly admitted in evidence.

Plaintiff's Exhibit O, the slip-on sweater and Plaintiff's Exhibit Q, the plastic bag. The manager of Roper's Clothing Company in Buhl identified appellants as having been in his store January 22nd. Appellant Johnson tried on a lady's skirt, but neither of appellants made a purchase. Appellant Johnson, when apprehended, wore a slip-on Pendleton sweater, Plaintiff's Exhibit O, which Roper's manager identified as the make, size and color of such a sweater in his store January 22nd. He also identified the plastic bag container, Plaintiff's Exhibit Q, in which the sweater was shipped, by the tab, the store's marking ticket, in the right-hand corner on the front of the exhibit. His store missed the sweater and container the following morning and the article was not sold.

Plaintiff's Exhibit P, the shoes. Appellant Johnson, when apprehended, also wore a pair of lady's tooled shoes, made in Mexico, Plaintiff's Exhibit P. The owner of Chris Originals Store in Buhl, identified appellant Johnson as having been in the store January 22nd. The owner waited on appellant Johnson who paid for the repair of two leather jackets. She then looked at tooled shoes and purses. A pair of tooled leather shoes were on a display counter. The owner did not sell any merchandise, nor particularly the shoes, to appellant Johnson. The owner discovered that the shoes were missing from the display counter the following morning, January 23rd. She stated that the shoes were a product of Mexico. The store owner confronted appellant Johnson wearing the shoes and her testimony appears:

"A. Mrs. Johnson told me, upstairs that day, that she bought these [the shoes] in Montana.

\*     \*     \*     \*     \*     \*

"Q. Mrs. Peterson \* \* \* did you have a conversation with Mrs. Johnson at that time? A. I did.

"Q. Was it regarding these shoes? A. She told me they were made in a penitentiary in Montana.

\*     \*     \*     \*     \*     \*

"Q. Was the conversation in regard to these shoes? A. Yes, sir.

"Q. Who was present at this conversation? A. Jim Benham. [The Sheriff.]

\*     \*     \*     \*     \*     \*

"Q. What was said and who said it?

*     *     *     *     *     *

"A. I said they were my shoes and she said they were gotten in Montana. * * * and I showed Jim Benham the soles of these shoes where in the little square it says made in Mexico."

Plaintiff's Exhibits O, the slip-on sweater, Q, the plastic bag, and P, the pair of lady's tooled shoes, were properly admitted in evidence.

Specifically do appellants contend error committed by the trial court in admitting in evidence the Philco portable radio, Plaintiff's Exhibit B. The evidence showing identification of this exhibit will be briefly reviewed. An employee of Wilson-Bates Appliance Company store, Buhl, identified appellants as having been in the store January 22, 1957. He waited on appellant Polson, who inquired about battery powered TV sets. He identified the Philco portable radio, Plaintiff's Exhibit B, as identical to such a radio in the store on January 22nd and which he ascertained to be missing the next day, January 23rd.

The manager of Wilson-Bates Appliance store testified that his store handled the type of merchandise as the Philco portable radio, during January 1957. He then testified:

"Q. * * * Is there any distinguishing features about that [the Phil-

co portable radio] that you can determine it came from your store? A. It has a model and serial number: model 655, Serial Number SK–04275.

*     *     *     *     *     *

"Q. And have you ever inventoried the merchandise you have on hand? A. Yes, sir.

*     *     *     *     *     *

"Q. Is that an inventory record made by you? [Plaintiff's Exhibit C.] A. Yes, sir. This is an inventory as of December 31, 1956.

*     *     *     *     *     *

"Q. Will you answer whether that exhibit has ever been a part of the inventory of Wilson-Bates Appliance Store in Buhl? A. Yes, sir.

"Q. How do you determine that to be a fact? A. Well, from my inventory from the fact that we purchased it for sale and the fact that I know the radio. It was in stock awhile and I know it by sight, as well as I know the serial number of it.

*     *     *     *     *     *

"Q. Will you look at it and see if the serial number is the same as that listed on this inventory? A. It is the same * * *."

The radio, Plaintiff's Exhibit B, was properly admitted in evidence.

Line 4 of the inventory, Plaintiff's Exhibit C, was then admitted in evidence, reading:

"Quantity 1; 655 number SK–04275, $27.58."

He then testified on cross-examination: "We check our sales slips continuously. This radio has never been sold."

The referred to evidence relating to the identification of said exhibits stands undisputed, and sufficiently identified the exhibits to allow their introduction in evidence. Further, Mr. Hankins, the Twin Falls deputy sheriff, identified the exhibits as those which he removed from appellants' automobile and tagged with his initialed tags, with the exception of the two articles of clothing, Exhibit O, the sweater, and Exhibit P, the shoes, which he identified as worn by appellant Johnson when apprehended.

■■■ Appellants assign error of the trial court in allowing introduction in evidence of the referred to Exhibits D, L, O, P and Q, claiming in effect that at the most they constituted evidence of separate transactions having no connection with the offense charged in the information. Appellants also assert error committed by giving Instructions Nos. 17 and 18, instructing that the jury may consider evidences of offenses, similar to the one forming the basis of the charge in the information, to aid in determining the intent with which appellants entered Wilson-Bates Appliance store in Buhl, but further instructing that before considering such evidence for such limited purpose the jury must be convinced beyond a reasonable doubt that such taking was in the course of a burglary.

Appellants' said assignments are without merit because the evidence relating to the taking of those exhibits show consummation of transactions similar and closely related to the alleged burglarious taking of the Philco portable radio and but shortly separated in point of time. Under such circumstances the evidence of other similar instances is admissible to show intent and motive of the accused.

State v. Emory, 55 Idaho 649, 46 P.2d 67, was a prosecution for bribery. The Court, in ruling that the admission of evidence of other transactions of asking for and receiving of bribes was not error, said at page 655 of 55 Idaho, at page 69 of 46 P.2d:

"Evidence of other offenses is admissible when such evidence tends directly to establish the particular crime; likewise evidence of other like crimes is usually competent to prove the specific crime when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related to each

other that proof of one tends to establish the others."

State v. O'Neil, 24 Idaho 582, 135 P. 60, holds that where a crime is committed in a systematic manner, it is competent to prove other similar transactions at different times and places to show the intent or motive of the accused.

In State v. Montgomery, 48 Idaho 760, 768, 285 P. 467, 469, error was sought to be predicated upon the refusal of the court to strike from the record all testimony of transactions similar to the particular offense of receiving stolen property with which defendant was accused. The Court held that evidence of other transactions similar to the specific crime charged was admissible to establish a common scheme or plan; the Court then stated:

"* * * nor is such probative fact to be excluded merely because it may also prove or tend to prove that the accused has committed another crime or many crimes. * * * When a defendant is shown to have received stolen goods from a thief, evidence of previous dealings with the thief in like transactions is admissible to show that the defendant at the time knew that the property had been stolen."

In State v. Lowe, 50 Idaho 96, 100, 294 P. 339, 340, a prosecution for forgery, the rule is stated:

"We think motive may be shown by proof of other acts by a defendant, showing a general scheme in the carrying out of which the crime charged is a distinct crime, even though other similar transactions proved, in showing such general scheme, may constitute independent crimes of a similar nature."

In State v. Cochrane, 51 Idaho 521, 6 P. 2d 489, a prosecution for grand larceny of moneys misappropriated, the state was permitted to show four transactions, in addition to the offense charged, of payment of moneys to the accused, as competent to prove the specific transaction charged, as tending to establish motive, intent, absence of mistake or accident, and a common scheme or plan embracing the commission of several transactions so closely related to each other and of the crime charged, that proof of the former tended to establish the latter.

In State v. Stratford, 55 Idaho 65, 72, 37 P.2d 681, 684, a prosecution for obtaining money under false pretenses, the Court, in ruling that evidence of other similar transactions was properly admitted, adopted the reasoning of People v. Rice, 206 Mich. 644, 173 N.W. 495, as follows:

"The general rule is well established * * * that upon trial for felony the prosecution will not be permitted to give evidence tending to establish the guilt of defendant of another distinct

and independent crime. But this rule has its exceptions; and * * * this court has held that evidence of similar transactions before the one charged are admissible to prove intent. * * Does this exception also permit the introduction of evidence of subsequent similar acts, occurring shortly after the one charged and a part of the same system or scheme for the like purpose of proving intent? We think that upon reason and authority this question must be answered in the affirmative. The underlying reason for the exception lies in the fact that a man may be honestly mistaken, have no fraudulent intent if the transaction stands alone, is single, but that the probabilities of an honest mistake diminish as the number of similar transactions indicating a scheme or system increase. Thus a man may honestly offer a counterfeit bill, and the one transaction, standing alone, has little force in proving guilty knowledge, in proving intent to defraud. But, if he successively, offers 5 or 25 counterfeit bills, as such offers increase in number the probabilities of an honest mistake diminish, and the probabilities of guilty knowledge, of intent to cheat, increase."

In State v. Dunn, 60 Idaho 568, 94 P.2d 779, 782, a prosecution for obtaining money under false pretenses under a fictitious contract, admission in evidence of other allegedly fictitious contracts of the defendant was held not objectionable, the Court stating:

"It is next contended it was prejudicial error to admit in evidence eleven other contracts all purportedly fictitious and made by appellant. The charge being the obtaining of money under false pretenses involving intent the evidence of similar offenses by the same defendant, part of the same fraudulent scheme, was clearly admissible."

In State v. McCallum, 77 Idaho 489, 295 P.2d 259, a prosecution for obtaining money under false pretenses, the admission of testimony regarding defendant's prior and subsequent transactions, similar to the offense charged, the similar transactions occurring nine months before and a few months after the instant transaction, was held not error. See also State v. Mundell, 66 Idaho 297, 158 P.2d 818; State v. Proud, 74 Idaho 429, 262 P.2d 1016; Bell, Handbook of Evidence for the Idaho Lawyer, p. 113; People v. Buyle, 22 Cal.App.2d 143, 70 P.2d 955; State v. Robinson, 35 S.C., 340, 14 S.E. 766; Burnett v. State, 83 Tex.Cr. R. 511, 201 S.W. 409; 22 C.J.S. Criminal Law §§ 663–665, pp. 1049–1052, § 683, p. 1089, § 686, p. 1100, and § 687, p. 1106.

Appellants assert that remarks of the trial judge following certain cross-examination by defense counsel constituted

prejudicial error. Appellants refer to the portion of the record reading as follows:

"Mr. Smith: What's that?

"Q. [by defense counsel Mr. Smith] To be perfectly honest with each other you wouldn't say with certainty that that toaster was ever in your store, would you, sir? A. I wouldn't say with certainty, no.

"Q. That is correct. The most you can say is that you sell Sunbeams? A. Yes.

"Q. That you mark them with a grease pencil. You never signed a complaint against these people, have you? A. No, we haven't.

"The Court: Pardon me, Mr. Smith. That isn't all.

"The Court: You haven't, in your cross examination, covered all of the testimony of this witness relating to the toaster, and you said in each question 'all you can say is', but you haven't included everything he testified to.

"Mr. Smith: Well, this is cross-examination.

"The Court: I know, but where you use the word 'all' it implies at least that you are incorporating in your questions, everything that the witness testified to, and you didn't do it.

"Q. Well, the things you feel certain about is that you did have a toaster in your stock? A. Yes.

"Q. And that this is a toaster? A. Yes.

"Q. But you are not positive or certain that this is the toaster you had in your stock, are you? A. No, I am not positive.

"Q. No, of course you are not.

"The Court: He also testified there was a toaster there.

"Mr. Smith: What's that?

"The Court: He also testified there was a toaster there on the morning of the day the defendants were in the store, and it was gone after they left.

"Mr. Smith: That's true. I am going to take exception to the comments of the Court.

"The Court: Very well. The record may show your exception."

Appellants contend that the effect of those remarks "had the tendency of destroying what defense counsel had obtained on cross-examination"; and also "had the effect of leading the jury to believe that the court was satisfied that they [the exhibits] were positively identified."

The remarks at the most constituted a suggestion to defense counsel that he frame

his questions without straying too far afield from the witness' testimony given on direct examination, and merely an attempt on the part of the trial judge to conduct the trial in a proper manner.

The true tests, to determine if the remarks of a trial judge are prejudicial, are whether those remarks constitute comment on the weight of the evidence, State v. Ward, 51 Idaho 68, 1 P.2d 620; or indicate an opinion of the court as to the guilt or innocence of the defendant, or tend to ridicule counsel or reflect upon his conduct in handling the case, State v. Rutten, 73 Idaho 25, 245 P.2d 778; or on the other hand, whether the remarks and conduct of the trial judge are intended only to make points clear or elucidate the matter under consideration, State v. Neil, 58 Idaho 359, 74 P.2d 586. See also State v. Roland, 11 Idaho 490, 83 P. 337; State v. Allen, 23 Idaho 772, 131 P. 1112.

In Cardoza v. Cardoza, 76 Idaho 347, 282 P.2d 475, 476, the rule is announced, amply supported by authorities:

"A trial judge is vested with broad discretionary powers in the conduct and during progress of a trial. His exercise of that discretion will not be disturbed unless abused or material harm be done to the complaining party."

The referred to remarks of the trial judge cannot be classified in any category constituting prejudice. Moreover, the trial judge instructed the jury not to consider or in any way or extent to be influenced or controlled by remarks or statements of the court in ruling upon the admissibility of evidence or evidence offered, or in replying to statements of counsel on either side.

Appellants claim prejudicial error committed by respondent's counsel by having miscellaneous prospective exhibits in the courtroom not admissible in evidence. Those exhibits were Plaintiffs Exhibits E, F, H, I, J, K, and N, electrical appliances found in possession of appellants. Though offered they were not admitted in evidence, the court deeming them not sufficiently identified. The court had them removed from the courtroom and thereupon admonished the jury:

"* * * ladies and gentlemen of the jury, you will not consider to any extent or for any purpose the articles to which reference has just been made and which have not heretofore been admitted in evidence."

It must be presumed that the jury obeyed the instruction of the trial court to disregard for any purpose the proffered exhibits, State v. Jester, 46 Idaho 561, 270 P. 417, and that the instruction cured the error complained of, State v. Autheman, 47 Idaho 328, 274 P. 805, 62 A.L.R. 195. We are constrained to point out however that the

State's Attorney should not bring exhibits into the courtroom as was done here unless he has sufficient information upon which to base a belief that the exhibits are admissible in evidence. It is by virtue of the overwhelming nature of the evidence, as herein elsewhere referred to, pointing to the guilt of defendants that we must hold no reversible error to have been committed in the premises.

Appellants next claim error committed by the trial court in giving Jury Instruction No. 19. That instruction informed the jury of the inference of guilt to be drawn from the unexplained possession of recently stolen property; also cautioned the jury to apply it only in case they found that the property was feloniously stolen; and in determining its weight, to consider all the circumstances attendant to such possession, such as lapse of time since the property was taken, nature of property taken, whether the property or any portion of it was concealed, whether the parties denied or admitted the possession, and demeanor and actions of the accused.

Appellants contend that the instruction should not have been given because of failure of proof that any exhibit, including the radio, was stolen, insisting that the evidence shows only, that the articles "turned up missing."

The evidence is to the effect that the exhibits admitted in evidence were articles known to be in the Buhl stores visited by appellants; that shortly after appellants left the stores, the exhibits were missing, although not sold to appellants or either of them; and that those exhibits were discovered, after a relatively short interval of time in the possession of appellants; also, the exhibits were identified sufficiently to warrant their introduction in evidence. Instruction No. 19 submitted to the jury the issue, whether appellants had taken the exhibits, and if so the circumstances attendant to the taking; also properly instructed the jury to consider all the surrounding facts and circumstances in determining how far the possession of the property by appellants, if proven, tended to show their guilt or innocence. We find no error in the instruction.

Appellants next claim error of the trial court in denying their demurrer to the evidence, their motion for new trial, and their motion in arrest of judgment.

All of those assignments raise the question of insufficiency of the evidence to sustain the verdict.

We have hereinbefore reviewed the evidence in some detail, showing the presence of appellants in various stores, their identification, and their taking sundry articles from those stores with fairly positive identification of the merchandise; that sales of those articles to appellants or either

of them had not been consummated, and the finding of the articles in appellants' possession; also that while the incident of appellants' alleged burglarious entry of Wilson-Bates Appliance store and their alleged felonious larceny therefrom of the Philco radio was selected as the basis of the charge against appellants, nevertheless there was shown to have been several similar transactions, with short intervening time elements.

The rule is stated in State v. Johnson, 77 Idaho 1, 287 P.2d 425, 429, 51 A.L.R.2d 1386, as follows:

"In a burglary prosecution it is sufficient to show unlawful intent when the entry was made, by circumstantial evidence. One's intent may be proved by his acts and conduct, and such is the usual and customary mode of proving intent."

State v. Kleier, 69 Idaho 278, 206 P.2d 513.

In ex parte Seyfried, 74 Idaho 467, 264 P.2d 685, 687, which was a prosecution for a burglary, it is stated:

"It is sufficient to show the essential unlawful intent when the entry was made by circumstantial evidence. Direct evidence of such intent is not required. One's intent may be proved by his acts and conduct, and such is the usual and customary mode of proving intent."

See also 9 Am.Jur., Burglary, § 61, p. 271; 12 C.J.S. Burglary § 48, p. 719; Hawkins v. State, 247 Ala. 576, 25 So.2d 441; People v. Rodis, 145 Cal.App.2d 44, 301 P.2d 886; Norris v. Commonwealth, 307 Ky. 675, 212 S.W.2d 120; Kitts v. State, 153 Neb. 784, 46 N.W.2d 158; State v. Reid, 230 N.C. 561, 53 S.E.2d 849, certiorari denied 338 U.S. 876, 70 S.Ct. 138, 94 L.Ed. 537.

■ The gravamen of the crime of burglary is that entry be made with intent to commit larceny. I.C. § 18–1401; State v. Dwyer, 33 Idaho 224, 191 P. 203; Ex parte Seyfried, supra; State v. Johnson, supra; State v. Fedder, 76 Idaho 535, 285 P.2d 802. The question of the intent with which appellants entered the premises referred to in the information was for determination of the jury from a consideration of all the facts and circumstances shown by the evidence. State v. Dwyer, supra; State v. Bull, 47 Idaho 336, 276 P. 528; State v. Hewitt, 73 Idaho 452, 254 P.2d 677; State v. Fedder, supra.

■ Our examination of the evidence discloses that it is amply sufficient to sustain the verdict and judgment of conviction. Where there is substantial, competent evidence to sustain the verdict it will not be disturbed on appeal. State v. Johnson, 77 Idaho 1, 287 P.2d 425, 51 A.L.R.2d 1386; State v. Bedwell, 77 Idaho 57, 286 P.2d 641.

We find no error in the trial court's denial of appellants' demurrer to the evidence, motion for new trial, and motion in arrest of judgment.

The judgment is affirmed.

PORTER, C. J., and TAYLOR, KNUDSON and McQUADE, JJ., concur.